No. 13,246.

City and County of Denver *v.* Stutzman.
(33 P. [2d] 1071)

Decided June 12, 1934.

Mr. James D. Parriott, Mr. Frederick P. Cranston, Mr. Karl C. Brauns, for plaintiff in error.

Mr. James A. Marsh, Jean Stauffer Perkins, for defendant in error.

*In Department.*

Mʀ. Jᴜsᴛɪᴄᴇ Bᴏᴜᴄᴋ delivered the opinion of the court.

Tʜᴇ defendant in error, Mrs. Stutzman, plaintiff below, recovered a judgment for $1,128.50 against the City and County of Denver (hereinafter called the city) for her daughter's death, alleged to be due to the city's negligence. The city seeks reversal.

On June 28, 1931, Nellie Dietrich, the daughter, aged fifteen, accompanied by other girls, was wading and playing in what is commonly called the Platte river, the bed of which at that point in South Denver belonged to the city. She and another girl walked toward the bank when they stepped into a hole and sank. The companion was rescued, but Nellie was drowned. The hole was an excavation under the surface of the stream. Its surface dimensions were between 25 and 30 feet in length and between 20 and 25 feet in width, and the depth was perhaps 12 feet. The cavity had been made by a dredge or dragline operated by the city.

Boys and girls were in the habit of similarly wading and playing in the stream, which, though generally shallow, was in some places knee-deep. There were no fences or other enclosures along the river, at or near that point, to warn of danger.

Counsel for the city deny its liability. They announce, as decisive of the case, these propositions: (1) That the city had no actual or constructive knowledge of the alleged dangerous condition; (2) that it was not the city's duty to erect a fence, or post signs, or give other warning of such condition; (3) that the city did give warning; (4) that the work done by the dredge was in the exercise of a governmental function; (5) that Nellie, the drowned child, was guilty of contributory negligence; and (6) that her mother, the plaintiff, was guilty of contributory negligence.

If proposition (4) is sound, that is, if the city's excavation was done in the exercise of a governmental function, then the judgment here must be reversed and a dis-

missal ordered. On the other hand, if the work was not so done, but was done in the city's private or proprietary capacity, then we must consider propositions (1), (2), (3), (5) and (6), which undertake to negative the charge of negligence made against the city, and involve the incidental defenses.

Plaintiff's counsel contend that no governmental function is involved, and they invoke the principle of *Windsor R. & C. Co. v. Smith*, 92 Colo. 464, 21 P. (2d) 1116, as evolved on the four occasions when it has been before us, therein mentioned. Counsel for the city contend that it is inapplicable, and say in effect that the Windsor company's liability was there based upon its permitting the continuance of a trap after having actual knowledge of the danger, and that the two cases are radically different.

█ Our first inquiry, then, is whether the excavation was in pursuance of a governmental function, as claimed in proposition (4).

Other states than Colorado, notably Kansas, have held that making public improvements of various kinds is a governmental function. This court, however, has repeatedly held that a municipality is liable for damage resulting, for instance, from its negligence in the planning, construction or maintenance of sewers and sewage systems. We cannot find any logical distinction between these activities and the dredging alleged here to have been for the purpose of flood prevention, which in the present case was clearly a local project, not in performance of any governmental duty imposed upon or delegated to the municipality by the state.

Proposition (4) having then been disposed of in the negative, the question recurs on propositions (1), (2), (3), (5) and (6).

█ It being admitted that the city actually made the excavation, it follows that proposition (1) is disproved. The law thereupon imposed a duty of reasonable diligence in safeguarding the situation so caused. The questions arising in relation to such duty and the persons

to whom the city owed it were properly covered by the instructions, and evidence was duly admitted in connection therewith. Thereby the contention made in proposition (2) was overcome. As for proposition (3), the evidence was conflicting.

Proposition (5), being upon the alleged contributory negligence of the deceased girl, is answered by the fact that the trial court properly received evidence on both sides of this issue. The same may be said of proposition (6), which asserts that the plaintiff herself was guilty of contributory negligence. Moreover, this last proposition was not raised by the pleadings.

We are not required to determine possible limitations or qualifications of the doctrine announced in the Windsor company case.

The evidence in the record here presents a substantial conflict throughout, and the jury were allowed to view the premises. Unless one or more of the city's objections to the giving or refusing of instructions be valid, and the overruling thereof prejudicial, the case becomes the ordinary one of questions of fact for the jury.

Only three of the instructions given by the court (Nos. 3, 4, and 8) were objected to, and, in the light of the views we express in this opinion, the objections were properly overruled.

Refusal to give instructions tendered by the city, numbered from 1 to 8, inclusive, was also proper. No. 1, No. 2, No. 4, and No. 6 undertook to dispose, by arbitrary legal pronouncement, of questions of fact. No. 3 amounts to directing a verdict for the defendant city on the issue of governmental function. No. 5 is ambiguous, confusing and self-contradictory, and also encroaches upon the province of the jury. No. 7 is indefinite, misleading and not supported by the evidence. No. 8 includes incorrect assumptions of fact, lays down as law what are really questions of fact, and, by abstractness of statement, the tendered instruction tends to mislead and confuse.

There being thus no prejudicial error in the giv-

ing or refusing of instructions, it was for the jury to determine the facts. This the jury did. Their verdict and the judgment entered thereon must stand.

Judgment affirmed.

MR. JUSTICE BUTLER, sitting for MR. CHIEF JUSTICE ADAMS, and MR. JUSTICE HILLIARD concur.