## No. 15,353.

ESQUIBEL *v.* CITY AND COUNTY OF DENVER.

(151 P. [2d] 757)

Decided June 26, 1944. Rehearing denied September 25, 1944.

Mr. JAMES D. PARRIOTT, for plaintiff in error.

Mr. MALCOLM LINDSEY, Mr. WAYNE D. WILLIAMS, for defendant in error.

*In Department.*

MR. JUSTICE JACKSON delivered the opinion of the court.

PLAINTIFF, a girl past eleven years of age, while trespassing on land belonging to the City and County of Denver, was injured, and brought suit against the municipality for damages. The trial court directed a verdict for the defendant. Plaintiff brings error.

The land upon which the accident occurred consisted of unfenced and otherwise unimproved lots at the corner of Yuma and 13th streets which the city had acquired by tax deed, title having been subsequently perfected by a quitclaim deed from the former owner. Although there were a number of homes facing on 12th street, the block in question was located in what is known as an industrial zone, and fenced junk yards were maintained in the immediate neighborhood. Without the express permission of the City and County of Denver, certain persons, operating under the name of the Western Compressed Steel Company, deposited old automobile bodies and parts on the lots in question, as well as on the land for two or three hundred feet both east and west of them. Plaintiff, with other children in the neighborhood, had previously used these lots as a playground, and continued to do so after the old automobile bodies and parts had been placed thereon. It is alleged in her complaint that "said bodies and parts were piled promiscuously and unevenly, and against and upon each other on said lots, and some of said automobile bodies were standing on end supported only by leaning on other such bodies and parts." Plaintiff testified that when the accident

occurred, "we were climbing bodies of old cars. * * * One of them turned over and I with it." As a result, the elbow joint of her right arm was dislocated, and the arm fractured. This suit for damages followed. Plaintiff further testified that she realized it was dangerous to play there; that she could see that the bodies were loose in places; admitted that her father had warned her not to play on the premises. There also was evidence that complaint had been made to certain employees of the city concerning the use of the lots by the steel company as a junk yard. The accident occurred about twelve weeks after the car bodies were first deposited on the the city lots. Defendant moved to dismiss the complaint. Judge Stanley Johnson denied the motion on the ground that the allegations that "the defendant had permitted its agents and employees and other persons" to deposit the automobile bodies, etc., upon the lots in question and that the defendant was "responsible for said automobile bodies and parts and debris being deposited on the defendant's property," were sufficient to carry the case to trial. The trial was before Judge Henry S. Lindsley who, after extended argument at the close of the evidence, granted the motion of defendant for a directed verdict.

Counsel for plaintiff does not contend that the city would have been liable had the accident in the instant case happened to an adult trespasser, but argues that the rule is otherwise in the case of a child; that the city, while not actually placing the car bodies on the lots, nevertheless in allowing them to remain there had created a nuisance attractive to children, and is therefore liable under the decisions in *Kopplekom v. Colorado Cement Pipe Co.*, 16 Colo. App. 274, 64 Pac. 1047, and *Denver v. Stutzman*, 95 Colo. 165, 33 P. (2d) 1071.

Counsel for defendant rely on *Hayko v. Colorado & Utah Coal Co.*, 77 Colo. 143, 235 Pac. 373, as exempting it from liability under the circumstances.

In *Denver v. Stutzman, supra,* a girl, aged fifteen,

with other girls, was wading and playing in the South Platte river, the bed of which at that particular place belonged to the city. While so engaged two of the girls stepped into a hole and sank. One girl was rescued; the other drowned. The hole or cavity had been made by a dredge or dragline operated by the city. The jury returned a verdict in favor of plaintiff, awarding damages for the death of the girl who had drowned, and we affirmed the judgment based on that verdict. In that case no mention is made of an attractive nuisance. The city was found guilty of negligence in conducting its dredging operations. It is evident in that case that the city itself created a dangerous condition which was latent and not apparent.

In *Hayko v. Coal Co., supra,* plaintiff, a boy in his tenth year, trespassing on the premises of defendant had entered an old, rough board shack and, abstracting therefrom a box of dynamite caps, lost several fingers in the explosion that followed as a result of playing with the caps. Plaintiff relied upon the attractive nuisance doctrine under the "turntable cases." There, as in the instant case, the trial court directed a verdict for the defendant, and we affirmed the judgment entered on the verdict. In that case defendant contended that, "plaintiff was a trespasser to whom there was owing no duty unless under the attractive nuisance doctrine; that the negligence under said doctrine consists in maintaining an attraction which entices to trespass, not merely entices one after he has become a trespasser; that plaintiff could not see the box of caps till he had trespassed; that therefore the caps cannot be classed as the attraction; that the attractive agency must be an unusual thing, of unusual attraction, not an ordinary thing, and that the shack was usual and ordinary and so, as a matter of law, cannot be considered as an attraction to trespass." We held the contention sound, and "supported by the highest authority."

We believe that the trial court properly ruled that the

defendant was not liable under the circumstances in the instant case. The evidence showed that plaintiff, along with other children in the neighborhood, had trespassed on said land and had used it as a playground prior to the dumping of the car bodies thereon. It is apparent that they trespassed on the land because of its availability and propinquity to their homes, and that they merely continued to trespass after the car bodies and other parts were deposited on the land. There is thus no clear indication that it was the existence of the car bodies that incited to trespass.

 Neither do we believe that this collection of junk satisfies the test announced by Judge Denison in *Hayko v. Coal Co., supra,* as an "unusual thing." His pronouncement in that case is particularly applicable to the situation in the instant suit. He said, inter alia: "While he [the owner of the premises] owes a duty to one invited, and some attractive agencies may amount to an invitation to a child, yet such an agency must invite to trespass and not merely after trespass, and must be an unusual thing, unusually, extraordinarily attractive, not an ordinary matter like a pile of lumber or of bricks (*Kelly v. Benas, supra* [217 Mo. 1, 116 S.W. 557, 20 L.R.A. (N.S.) 903]), or a railway station (*Ling v. Great Northern Ry Co.,* 165 Fed. 813), or a stable (*Giannini v. Campodonico,* 176 Cal. 548, 169 Pac. 80), or a pile of cross-ties (*Tomlinson v. Vicksburg, etc., Ry. Co., supra* [143 La. 642, 79 So. 174]), or an apple tree or a shack in a coal camp." As heretofore noted, junk yards were the common, rather than the unusual, thing in the neighborhood involved in the instant case.

 Counsel for plaintiff cites various passages from Restatement of the Law of Torts. We believe that chapter 13, section 339, page 925, Comment on Clause (c), is applicable to the facts in this case: "e. A possessor of land is, under the statement made in Comment a, under a duty to keep so much of his land as he knows to be subject to the trespasses of young children, free from

artificial conditions which involve an unreasonable risk of death or serious bodily harm to them. This does not require him to keep his land free from conditions which even young children are likely to observe and the full extent of the risk involved in which they are likely to realize. The purpose of the duty is to protect children from dangers which they are unlikely to appreciate and not to protect them against harm resulting from their own immature recklessness in the case of known danger. Therefore, even though the condition is one which the possessor should realize to be such that young children are unlikely to realize the full extent of the danger of meddling with it or encountering it, the possessor is not subject to liability to a child who in fact discovers the condition and appreciates the full risk involved therein but none the less chooses to encounter it out of recklessness or bravado."

In the summation of the very extended note in 36 A.L.R. on the subject of attractive nuisances, we find, at page 294, this paragraph: "In the second place, the danger to be guarded against must be one which is not common and obvious. The property owner has the right to expect that. the natural guardians of children who are too young to understand and avoid ordinary dangers will keep such children away from them, or not allow the children to encounter them unless properly accompanied. Hence, he is not bound to anticipate their presence and make provision for their safety." Most of the foregoing paragraph is also quoted with approval in *Ray v. Hutchison,* 17 Tenn. App. 477, 68 S.W. (2d) 948.

In the instant case the nuisance—created by a trespasser—was common and not extraordinarily attractive. The danger was obvious and not latent—in fact so apparent, that the father of plaintiff had warned her, as well as the other neighborhood children, concerning it. Like the ten year old boy in *Twist v. Winona & St. P. R. R. Co.,* 39 Minn. 164, 39 N.W. 402, 12 Am. St. Rep.

626, she herself testified she had been warned and appreciated the risk she was incurring in so trespassing. Under pertinent legal principles and the foregoing authorities, we are of the opinion that the judgment should be, and it is, affirmed.

MR. CHIEF JUSTICE YOUNG and MR. JUSTICE HILLIARD concur.