No. 15,834.

PHIPPS ET AL. *v.* MITZE.
(180 P. [2d] 233)

Decided April 28, 1947.

Mr. O. Otto Moore, for plaintiffs in error.

Mr. Grant E. McGee, Mr. Charles A. Murdock, for defendant in error.

*En Banc.*

Mr. Justice Jackson delivered the opinion of the court.

Plaintiffs in error brought suit for the death of their son, aged nine, for damages in the statutory maximum of $5,000—allowed for death by wrongful act—against defendant in error. The latter was the owner of, and occupied, the land upon which was located a small body of water in which the boy was drowned while trespassing on defendant's land.

In a trial to a jury plaintiffs introduced evidence which showed that their son, along with his older sister, aged eleven, and other children, entered defendant's land and in the course of a "hike" came upon two ponds which up to that time they did not know existed. The ponds were artificial, having been created by throwing dams across an arroya. Some of the children stopped at the smaller pond to play, but the nine year old son and the eleven year old daughter of plaintiffs waded into the larger pond. They had a stick with which to measure the depth of the water, and when they had proceeded to a point where the water was of greater depth, they discussed the advisability of proceeding farther. The girl was inclined to draw back, but the boy proceeded, encountered a step-off, or ledge, from which he was precipitated into water which exceeded his height in depth, and was drowned.

Plaintiffs, in their complaint, alleged: "That the de-

fendant well knew of the hidden danger caused by the existence of said trench in said reservoir, and the said defendant well knew that children, including the said Doyle Charles Phipps were in the habit of wading in said reservoir, and in fact said defendant permitted them so to do." Their evidence, however, did not wholly support the foregoing allegation. It included the testimony of one fifteen year old boy who stated that he had frequented the reservoir site a number of times, and that he had been warned by the sheriff, at the instance of the landowner, and also by the landowner to stay away from it. Another boy of the same age stated that he had visited the ponds and had been warned personally by the landowner to keep away from them. The parents of the drowned boy testified that they had warned him to stay out of all bodies of water. There also was testimony to the effect that there was no fence within a radius of a quarter of a mile of where the accident occurred. There was a fence, partly broken down in places, marking the boundaries of defendant's land, which the children found no difficulty in crossing. The evidence further showed that the ponds on the land where the death occurred had been constructed by some predecessor in interest to defendant, and that defendant continued to maintain them as he found them when he purchased the property—using the collected water for irrigation. The ponds were not visible from any public highway or road, and their existence could be discovered only by entering upon and traversing the land of defendant. There was no warning sign at either of the ponds. An old, fallen-down, wooden sign forbidding fishing was found some distance away, and there was a fallen "no hunting" sign about a mile away.

At the conclusion of plaintiffs' case, on motion of defendant, the trial court directed a verdict in favor of the defendant, and plaintiffs here seek a reversal of that ruling, contending that there was sufficient evidence to warrant the submission of the case to the jury. To sup-

port this contention, chief reliance is placed upon Restatement of the Law – Torts, section 335, and *Smith v. Windsor Reservoir & Canal Co.,* 78 Colo. 169, 240 Pac. 332; *Windsor Reservoir & Canal Co. v. Smith,* 82 Colo. 497, 261 Pac. 872; *Smith v. Windsor Reservoir & Canal Co.,* 88 Colo. 422, 298 Pac. 646; *Windsor Reservoir & Canal Co. v. Smith,* 92 Colo. 464, 21 P. (2d) 1116.

In respect to the quotation from Restatement of the Law – Torts, supra, it seems to us that section 339 is more applicable to the facts in this case than is the quotation from section 335 used by counsel. The subject of section 335 is, "Artificial conditions highly dangerous to constant trespassers upon a limited area," whereas section 339 (e) reads as follows: "A possessor of land is, under the statement in Comment a, under a duty to keep so much of his land as he knows to be subject to the trespasses of young children, free from artificial conditions which involve an unreasonable risk of death or serious bodily harm to them. This does not require him to keep his land free from conditions which even young children are likely to observe and the full extent of the risk involved in which they are likely to realize. The purpose of the duty is to protect children from dangers which they are unlikely to appreciate and not to protect them against harm resulting from their own immature recklessness in the case of known danger. Therefore, even though the condition is one which the possessor should realize to be such that young children are unlikely to realize the full extent of the danger of meddling with it or encountering it, the possessor is not subject to liability to a child who in fact discovers the condition and appreciates the full risk involved therein but none the less chooses to encounter it out of recklessness or bravado." See, also, concluding pages in extended note in 36 A.L.R. 34 on the subject of attractive nuisances.

In *Windsor Reservoir & Canal Co. v. Smith, supra,* 92 Colo. 464, 21 P. (2d) 1116, we affirmed a judgment

based upon a jury verdict awarding damages for the death of a minor caused by drowning. In that case the boy was precipitated into the water from a false bank which, becoming thawed, collapsed. The danger in that case was latent and undisclosed. In the instant case the danger was open and apparent, and even discussed by the boy involved in the tragic drowning. In the last mentioned Windsor Reservoir case there also was evidence—though strenuously opposed—that the company not only had permitted, but actually had encouraged children to play on the banks of its reservoir. There was no similar evidence in the instant case. We, therefore, are of the opinion that that case is not controlling here.

"Ponds, pools, lakes, streams, and other waters embody perils that are deemed to be obvious to children of tender years; and as a general proposition no liability attaches to the proprietor by reason of death resulting therefrom to children who have come upon the land to bathe, skate or play." 20 R.C.L., p. 96, §85.

Because the danger was apparent rather than latent, and also because the minor involved had been warned of the danger, the present case is somewhat analogous to *Esquibel v. City and County of Denver,* 112 Colo. 546, 151 P. (2d) 757, where we affirmed the judgment of the trial court denying recovery for injuries sustained by a minor while playing on junked automobile bodies which had been placed on lots belonging to the City and County of Denver. See, also, *Hayko v. Colorado & Utah Coal Co.,* 77 Colo. 143, 235 Pac. 373; 39 A.L.R. 482.

The judgment is affirmed.