No. 20,444.

THE DENVER TRAMWAY CORPORATION *v.* JAKE GARCIA, BY HIS NEXT FRIEND AND MOTHER, MARY EDWARDS.
(390 P. [2d] 952)

Decided April 6, 1964.

Messrs. HUGHES & DORSEY, Mr. RAYMOND B. DANKS, for plaintiff in error.

Mr. ISAAC S. WILLSON, Mr. ALFRED J. HAMBURG, for defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

WE will refer to plaintiff in error as defendant and to defendant in error as plaintiff, as they appeared in the trial court.

The action was brought to recover damages for personal injuries sustained by plaintiff in an accident allegedly caused by the negligence of defendant. At the time of the accident plaintiff was nine years and eight months of age. The incident giving rise to the controversy took place on May 12, 1960. The complaint was filed October 20, 1961. In substance, plaintiff alleged that the defendant was a common carrier of passengers for hire and operated and maintained a large bus garage at 36th avenue and Franklin street in Denver, in which it stored and serviced buses not in actual use. Paragraph III of the complaint reads as follows:

"That because said garage and the buses stored therein were especially alluring and enticing to children of tender years and appealed to the children's instinct and impulses, such garage and buses, and the manner in which they were maintained, impliedly invited such children to play in, on and about said garage and buses. Said maintenance by the defendant included leaving the

garage doors unguarded and unattended by any agent, servant or employees of defendant."

It was alleged in substance that children in the vicinity of the garage frequently played therein and that agents of the defendant knew it was dangerous for the children to do so but nevertheless "permitted such children to continue to play in and use their property without molestation or admonition, and thereby sanctioned and consented to the conduct of such children." Paragraph VI of the complaint contains the following allegation:

"That on or about the 12th day of May, 1960, the plaintiff, together with other small companions, was playing about the premises of the defendant above described and about the buses above described. That the plaintiff was underneath one of the buses and while there, an agent or employee of the defendant started said vehicle in motion and the wheels of said vehicle rolled over the plaintiff and crushed his legs and left arm between the wheels of said vehicle and the garage floor."

The negligence charged against the defendant is set forth in paragraph VII of the complaint as follows:

"That the injuries sustained by the plaintiff and the resulting damages to the plaintiff were directly and proximately caused by the negligence of the defendant, its agents or employees, and said negligence consisted of leaving said garage doors unguarded and unattended so that said garage was easily accessible to children of tender years and especially this plaintiff; and further the defendant, its agents or employees failed to observe that the plaintiff was under said bus before causing the same to be put into motion and failed to use reasonable care to make said garage and buses safe for children of tender years and especially this plaintiff to play on, in and about."

By its answer defendant denied that it maintained at said garage an "attractive nuisance"; denied any

negligence on its part; affirmatively alleged contributory negligence on the part of the plaintiff; and affirmatively alleged that at the time of the incident complained of plaintiff was a trespasser and that defendant had no knowledge of the presence of plaintiff on its property. Trial was to the court and resulted in a judgment in favor of plaintiff in the amount of $4,500.00.

As grounds for reversal of the judgment it is argued by counsel for defendant that:

"I. The Trial Court erred in finding defendant negligent.

"II. The Trial Court erred in not finding that plaintiff was guilty of contributory negligence."

There was little material conflict in the evidence. In substance it was shown that the service and storage garage operated by defendant covers a full city block; that the interior of the garage is divided into several sections which are separated by walls; that the accident occurred in the easterly section which contained three lanes, entrance to which is made through one of two doors; that only two buses were standing in this section, to be refueled or otherwise serviced; that at the time of the accident one of the entrance doors was open; that the distance from the open door to the bus involved in the accident was about 200 feet; and that four employees of the defendant were on duty in different areas of the garage but the presence of the plaintiff and another boy who entered the garage with him was not known to any of them.

One of the employees started the motor in one of the buses and began to move it to another area of the garage and in so doing ran over a part of the body of plaintiff who had hidden under the bus to avoid being seen by the workman who came to the bus after he had entered the garage. There can be little doubt that the two boys who entered the garage did so in order to filch newspapers from the bus, which they intended to· sell on the streets. Plaintiff's companion, Lee Smith, testi-

fied that he entered the garage to get papers to sell; that the plaintiff entered with him, and that they did not want to be seen by the employees of the defendant. He testified, inter alia:

"Q. (By Mr. Willson) Did Jakie take any papers on this day? A. I don't know. All I know is that I seen the man coming, — I jumped on and said, 'I'm going to get some papers,' and he was under the bus, and he says, 'Yes, here comes a man.' I said, 'I'm going to get some papers,' and he said, 'Here comes a man.' And I ran back and put the papers in my hand, and I hid, and the man got onto the bus, and pretty soon I heard a noise start and somebody say, 'Ah-h-h-h-h.' And I felt like a little bump go like that, and so the man jumped out, and I jumped out, too, but he didn't see me when I jumped out. I waited until he jumped out, and then he seen that somebody was under the bus. I guess he ran and told somebody, because I jumped out of the bus then, and then I ran up and ran back. I played like I was just coming to see what happened, and I left the papers in the bus that day."

On cross-examination the witness testified, inter alia:

"Q. Did you go into the garage to get some of the newspapers in the buses? A. I did. Q. You did? A. Yes, sir. Q. Did Jake come in at the same time you came in? A. Yes, sir. Q. Did you go immediately to one of the buses? Did you go directly to the bus and get in it? A. No, sir. Q. Where did you go? A. I went looking around, and then we started playing for a little while, and then I said, 'We had better quit fooling around, because,' I say, 'if you are going to get some papers with me, come on.' So he was staying — I say, 'I'm going to get me some papers,' and I said, 'Come on, follow me.' Q. You were talking to Jakie? A. Yes. Q. All right. Did he follow you then? A. Yes, sir."

Plaintiff testified that he and three other boys (one of whom was Lee Smith) went down to the garage in the late afternoon on the day of the accident; that

" * * * this boy that was with me said he had gone in there before, so he asked me if I wanted to go in there, and I said, 'I'm sure my mom would get mad' — So I went in there with him." He explained that he hid under the bus and that he thought the workman was, " * * * going to check a tire, or something, and then after he had did that, then he went in the bus, and I didn't know what he was going to do, and then I heard the motor start, and then after that I was going to get out, but then the bus got started, and then I was trying to roll out, and then the bus ran over my leg * * *."

On cross-examination of plaintiff the following took place:

"Q. When was the first time you saw a Tramway man? A. When I went under the bus. Then I saw him coming over there by the door. Q. When you went under the bus? A. Yes.

* * *

"Q. All right. You have seen Tramway buses before this accident, haven't you, Jake? A. Yes. Q. You saw them everyday on the streets, isn't that right? A. Yes. Q. You knew they were red, and you knew they were cream, isn't that right? The color? A. Yes. Q. Were they the same color — those two buses in the garage when you were hurt? A. Yes. Q. Had you ever ridden on a bus? A. Yes. Q. You have ridden in automobiles? A. Yes. Q. You have been living here in Denver, is that right? A. Yes. Q. The only thing you saw from where you were out in the street that you noticed were those two buses parked in there, is that right? A. Yes.

* * *

"Q. Having lived here in Denver, you knew that if you got under a bus or an automobile, and that bus or automobile started to move, you might get hurt? You knew that, didn't you? A. (Nodding head affirmatively). Q. Answer, 'Yes,' or 'No.' A. Yes. Q. You knew when you got under this Tramway bus that if the bus started to move, there would be a chance you might

get hurt, is that correct? A... (Nodding head affirmatively.) Q. Your answer is, 'Yes'? A. Yes."

 Upon consideration of the full record in this case we find no evidence sufficient to sustain the finding of the trial court that the defendant was guilty of negligence which was the proximate cause of the injuries sustained by plaintiff. The evidence does not establish the maintenance by defendant of an "attractive nuisance" as that term has been defined by opinions of this court. In *Hayko v. Colorado & Utah Coal Company*, 77 Colo. 143, 235 Pac. 373, this court said:

"To constitute an attractive nuisance, the agency must invite to trespass and not merely after the trespass. It must be an unusual thing, unusually and extraordinarily attractive, not an ordinary matter."

In *Dunbar v. Olivieri*, 97 Colo. 381, 50 P. (2d) 64, a nine-year-old boy suffered burns as a result of coming in contact with a rubbish-burning fire on an open lot of the defendant. This court said, inter alia:

" * * * But it is obvious that in the present case, under the evidence before us, the injured boy was not attracted by anything heretofore deemed by this court to be such a nuisance. Neither his own testimony nor any other in the record brings the case at bar within the attractive-nuisance principle. The rubbish-burning device was on the defendant's premises. As said by Mr. Justice Denison in *Hayko v. Colo. & Utah Coal Co.*, 77 Colo. 143, 146, 235 Pac. 373, 374: 'It will not do to say that every attractive thing is sufficient to charge a defendant with negligence in enticing children to trespass, because there is nothing that can be said not to be attractive to a child. * * * While he owes a duty to one invited, and some attractive agencies may amount to an invitation to a child, yet such an agency must invite to trespass and not merely after trespass, and must be an unusual thing, unusually, extraordinarily attractive * * *.' Neither sound reasoning nor the cases cited by the plaintiff

would justify our extending the doctrine to the case at bar."

To like effect is the opinion in *Esquibel v. City and County of Denver*, 112 Colo. 546, 151 P. (2d) 757; and *Phipps, et al., v. Mitze*, 116 Colo. 288, 180 P. (2d) 233.

■ Counsel for plaintiff place reliance on *Krause, et al., v. Watson Bros. Transportation Company, Inc., et al.*, 119 Colo. 73, 200 P. (2d) 387. The facts in that case are clearly distinguishable from those present in the instant action. In *E. P. Swerdfeger v. John L. Krueger, Minor, etc.*, 145 Colo. 180, 358 P. (2d) 479, this court quoted and approved the following from Restatement of the Law — Torts, § 399 (e):

" * * * the possessor [of land] is not subject to liability to a child who in fact discovers the condition and appreciates the full risk involved therein but none the less chooses to encounter it out of recklessness or bravado."

This statement is equally applicable where the child, knowing full well of the danger, attempts to avoid being discovered by concealing himself in a place which he knows to be dangerous.

There was no competent evidence establishing negligence on the part of the defendant. The judgment accordingly is reversed and the cause remanded with directions to dismiss the action.