Diane **GERINGER, individually, and as parent and next best friend of Tara Geringer, and as surviving spouse of William Geringer, decedent, and mother of Jared Geringer, decedent, Plaintiff(s),**

v.

**WILDHORN RANCH, INC., a Colorado Corporation, M.R. Watters and Les Bretzke, Defendants.**

Civ. A. No. 87–F–1213.

United States District Court,
D. Colorado.

Dec. 14, 1988.

See also 706 F.Supp. 1452.

Douglas E. Bragg, James A. Cederberg, Denver, Colo., for plaintiff.

Donald E. Cordova, Denver, Colo., for defendant Wildhorn Ranch, Inc.

Sheldon E. Friedman, Christopher T. Macaulay, Miles Cortez, Englewood, Colo., for defendant M.R. Watters.

Deana Willingham, Wheatridge, Colo., for defendant Les Bretzke.

## MEMORANDUM OPINION AND ORDER ON POST–TRIAL MOTIONS

SHERMAN G. FINESILVER, Chief Judge.

This matter comes before the court on motions of defendants for judgment notwithstanding the verdict, for new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure, and for amended judgment. On September 28, 1988, the jury returned a verdict against defendants for damages arising out of a boating accident at the Wildhorn Ranch Resort. The court considered many of the issues raised in defendants' post-trial motions prior to and during trial. We have considered defendants' motions collectively and individually and conclude that neither a new trial, judgment notwithstanding the verdict, nor amended judgment is warranted. The evidence supports the jury's verdict. The several motions are DENIED for the reasons stated below.

### I.

Plaintiff Diane Geringer brought this action in her own name and as guardian of her minor-daughter Tara Geringer, pursuant to Colorado law, seeking damages for personal injuries and the wrongful death of her husband William Geringer and minor-son Jared Geringer. Jurisdiction before this court is based on diversity of citizenship. 28 U.S.C. § 1332.

During August of 1986, the Geringer family was vacationing at the Wildhorn Ranch Resort, a guest ranch located in Teller County, Colorado.[1] William and Jared Geringer drowned during a boating accident on a lake at the Ranch. Paddleboating was among the recreational activities offered by the Resort.

At trial, the liability evidence focused on the maintenance and condition of the paddleboats, operation of the Resort, and plaintiffs' conduct in procuring and operating the boat. Plaintiffs' case focused on repairs made a short time prior to the accident and defendants' knowledge that the

---

1. Our statements are drawn from testimony and arguments of counsel at trial.

boats leaked, filled with water, and became unstable. Defendants' case for comparative or contributory negligence argued that the Geringers took out a boat that had been secured to the shore and acted unreasonably in not wearing life jackets. Plaintiffs' rebuttal raised conflicting evidence as to whether the boats had indeed been secured to discourage their unsupervised use and whether life jackets were available.

Defendant M.R. Watters originally owned the Ranch, but claimed to have deeded it over to Wildhorn Ranch, Inc. Wildhorn Ranch, Inc. operated the Resort and provided management services to the homeowners association time-share cabins. The corporation was owned by the three members of its Board of Directors, M.R. Watters, son David, and wife Doris. Defendant Les Bretzke was an independent contractor whose company provided repair and construction services to the Resort and the homeowners association. Evidence presented at trial showed that Bretzke was significantly involved in the operations of the Resort through management meetings and the supervision of Resort employees. Bretzke supervised the repair of the boats. M.R. Watters inspected the boats and determined they were fit for return to the water. The boats were repaired by a Resort employee with the assistance of a ranch-hand. The ranch-hand was employed by a firm contracted to operate horseback riding facilities at the Ranch.

■ Evidence was also presented at trial on the issue of corporate alter-ego. The theory of corporate alter-ego requires plaintiff to show that an individual consistently disregarded the formalities of the corporate form and so dominated the affairs of the corporation, in a manner which injured the plaintiff, that to continue to acknowledge the legal fiction of the corporation would promote injustice and harm public convenience.[2] This evidence was presented through the testimony of M.R. Watters and others involved in the opera-

tion of the resort and through the admission of various corporate records.

At the close of defendants' case, we directed a verdict for the homeowners association and David Watters, finding a reasonable juror could not conclude that any conduct attributable to these defendants caused the accident.

The jury found that all of the parties had been negligent and that their negligence had caused the plaintiffs' injuries. The jury apportioned the negligence causing the accident as follows: zero percent (0%) of the negligence was attributed to Wildhorn Ranch, Inc.; seventy percent (70%) of the negligence was attributed to M.R. Watters; twenty percent (20%) of the negligence was attributed to Les Bretzke; five percent (5%) of the negligence was attributed to Diane Geringer; and five percent (5%) of the negligence was attributed to William Geringer. The jury concluded that Wildhorn Ranch, Inc. was the corporate alter-ego of M.R. Watters and charged negligence attributable to the corporation to M.R. Watters. The jury also found that the conduct of each of the defendants was wanton and willful and awarded exemplary damages against each of the defendants.

## II.

At trial, defendants contended that the Colorado premises liability statute applied to the case rather than common law simple negligence. *See* Colo.Rev.Stat. § 13–21–115. The court, however, held that the statute was inapplicable. Claims founded on the statute were stricken.[3]

Post-trial, defendants Watters and Bretzke contend that they were prejudiced by failure to instruct the jury on premises liability in that the landowner's standard of care under the statute is higher than that of simple negligence. Defendant Bretzke contends that the statute provides the exclusive remedy for injuries incurred on the premises of a landowner.

---

2. *See* Section III, *infra.*

3. Premises liability claims had been added to the litigation through amendment. Earlier, the court denied defendants motions to dismiss the complaint for failure to state a claim under the premises liability statute.

A 1986 Colorado statute includes substantially different language than that applied by Colorado courts in the past. *See* Salmon, *1986 Colorado Tort Reform Legislation*, 15 Colo.Lawyer 1363, 1370 (1986); Hyman and Feiger, *Legal Aspects of Health and Fitness Clubs: A Healthy and Dangerous Industry*, 15 Colo.Lawyer 1787, 1792 (1986).[4] The statute requires that the court determine which standard of care applies to a case. Colo.Rev.Stat. § 13–21–115(4). Issues of liability and damages are left to the jury. *Id.*

Assuming that the Geringers were invitees and the defendants were landowners under the statute, the duty litigated in this case did not arise out of that relationship. *See* Colo.Rev.Stat. § 13–21–115(1) and (3)(c). The statute provides:

> In any civil action brought against a landowner by a person who alleges injury occurring while on the real property of another *and* by reason of the condition of such property, or activities conducted or circumstances existing on such property, the landowner shall be liable only as provided in subsection (3) of this section.

*Id.* at (2) (emphasis added). The statute clearly requires more than a finding that the defendant owns the land on which plaintiff was injured. The second element requires the court to consider the nature of the occurrence and to make distinctions. The statute does not establish a feudal realm of absolute protection from liability for simple negligence based only on a defendant's status as a landowner.

The second element lists two alternative types of injury. The alternatives are related in their focus on the relation between the land and the injury. The statutory classification "activities conducted or circumstances existing on such property" must be read narrowly with careful regard for the intent of the legislature to re-establish common law distinctions in the law of premises liability. *See Pigford v. People*, 197 Colo. 358, 593 P.2d 354 (1979) (statutes in derogation of common law are to be strictly construed to restrict provisions to the clear intent of the legislature); *Matter of Colacci's Estate*, 37 Colo.App. 369, 549 P.2d 1096 (1976) (statutes in derogation of common law should be strictly construed). Traditionally, the activities for which a defendant is liable as a landowner are inherently related to the land—construction, landscaping or other activities treating the land. *See, e.g., Smith v. Cutty's Inc.*, 742 P.2d 347 (Colo.App.1987) (guest injured in toboggan accident at resort, liability turned on condition of toboggan path); *White v. Pines Enterprises, Inc.*, 728 P.2d 759 (Colo.App.1986) (slip and fall, liability turned on negligent snow removal and duty to homebuyer invitees).

The causation evidence in this case focused on defendants' maintenance of the paddleboats and on defendants' knowledge of their condition following purported repairs. The duty litigated in this case was that of a supplier of chattel to provide its user with chattel that was not defective. Breach was established, in part, by evidence of negligent maintenance and repair of that chattel. The fact that boats must be used on a lake is no more instructive than the fact that, generally, any activity conducted by humans must necessarily occur on the earth. The statute does not reflect an intention to extend the application of premises liability doctrine to the negligent supply of chattel by a landowner.

The Colorado premises liability statute does not apply to this case. Motions of defendants Watters and Bretzke for new trial based on submission of the case to the jury on simple negligence rather than premises liability are denied. *See* Fed.R. Civ.P. Rule 59.

---

**4.** The Colorado statute was enacted after the Colorado Supreme Court abolished various common law standards. *Mile High Fence Co. v. Radovich*, 175 Colo. 537, 489 P.2d 308, 310 (1971) (standards of simple negligence apply in premises liability actions). Salmon, *1986 Colorado Tort Reform Legislation*, 15 Colo.Lawyer 1363, 1370 (1986). The common law standards were keyed to a plaintiff's status as a trespasser, licensee or invitee. Like the common law, the new statute establishes duties owed by a landowner to three categories of plaintiffs. To date, few courts have construed the language of the new statute.

### III.

Defendant Watters challenges the verdict finding him liable for the negligence of his alleged corporate alter-ego, Wildhorn Ranch, Inc. By its verdict, the jury found that Wildhorn Ranch, Inc. was the corporate alter-ego of defendant M.R. Watters and that his domination of the corporation caused injury to the plaintiff. The record reflects that there was sufficient evidence to support the jury verdict that M.R. Watters liable for his own negligence as well as that of the corporation.

 Federal and Colorado pleading rules require only that a defendant be afforded adequate notice of the claims against him. *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Rand v. Perales,* 737 F.2d 257, 260 (2nd Cir.1984); *LaFond v. Basham,* 683 P.2d 367, 369 (Colo.App.1984). Rule 15 of the Federal Rules of Civil Procedure requires that a plaintiff submit "a short and plain statement of the claim showing that the pleader is entitled to relief." Under the Rule, a plaintiff need not plead all the elements of a specific theory but need only notify the defendant of intent to prove liability for injuries. *Runyan v. United Brotherhood of Carpenters,* 566 F.Supp. 600, 608 (D.Colo.1983). If a defendant has sufficient notice of the focus of the evidence at trial, Rule 15(b) provides the court with discretionary authority to allow post-trial amendment to conform to the evidence, and further that such amendment shall be freely granted.

Defendant Watters contends that he did not receive notice of plaintiffs' alter-ego theory until two weeks before trial, when trial briefs and jury instructions were exchanged. Defendant's evidence at trial on the corporate alter-ego theory consisted mainly of the testimony of M.R. Watters and his son David regarding corporate finances, organization, and the responsibilities of corporate officers. Plaintiffs impeachment of this testimony included the presentation of inconsistent testimony of employees regarding corporate organization and operation and the lack of documentary proof of the formal structure claimed by the defendant. Defendant Watters alleges that documentary proof could have been gathered and presented had he been properly apprised of the claim before trial.

 Plaintiffs' complaint alleged that defendant Watters was the "owner" of the Ranch and the Resort, that as owner of the Resort he was "vicariously liable" for deliberate negligence of its employees, and that his own actions as a corporate officer were deliberately negligent and caused injury to the plaintiffs. On May 16, 1988, defendant Watters filed a motion to dismiss the claims against him personally. Watters argued, in part, that since he had no contact with the plaintiffs during their stay at the Resort, their only theory of recovery was one which disregarded the corporate form of Wildhorn Ranch, Inc. Defendant argued that the claims against Watters should be dismissed for failure to state a corporate alter-ego claim. On June 10, 1988, plaintiffs responded that their theory was one of corporate alter-ego and detailed evidence which included the lack of documentary proof. The pre-trial motion to dismiss was denied. In our view, defendant Watters was adequately apprised of the plaintiffs intent to use corporate alter-ego as the legal theory to support allegations of personal and vicarious liability. Defendant Watters was also put on notice of the court's intention to allow plaintiffs to proceed on that theory. Defendant Watters was not prejudiced in preparing to meet plaintiffs' claims.

 Defendant Watters's acknowledgment of the issue in his motion to dismiss (filed May 16, 1988) demonstrates that the complaint and circumstances known to him put Watters on notice that the corporate alter-ego theory was essential to one of plaintiffs claims against him. Defendant Watters's testimony at trial demonstrates that his lawyers were prepared to make a record of what they believed would prove the corporate form of Wildhorn Ranch, Inc. There can be no prejudice where the chairman of the board and president of a closely held corporation had four months to gather corporate minutes, promissory notes, or

documentation of the purchase of stock.[5] *See Rand v. Perales,* 737 F.2d 257, 260 (2nd Cir.1984) (adequate notice is that which apprises reasonable person in the position of the recipient of the possible consequences of the claim).

■ Colorado law is consistent with general common law on corporate alter-ego or piercing the corporate veil. *See Micciche v. Billings,* 727 P.2d 367, 372–73 (Colo. 1986); *Fink v. Montgomery Elevator Co.,* 161 Colo. 342, 421 P.2d 735, 739 (1966) (quoting 1 Fletcher, Cyclopedia of Corporations § 41.1); *see also* Krendl and Krendl, *Piercing the Corporate Veil: Focusing the Inquiry,* 55 Den.L.J. 1 (1978). Whether or not adherence to the corporate fiction would promote injustice in a particular case is an equitable issue. *LaFond v. Basham,* 683 P.2d 367, 369 (Colo.App.1984). Where the parties to an action with jury triable issues do not agree that an equitable issue should be presented to the jury, the court may substitute its own findings of fact for those of the jury, if necessary. 1 Fletcher, Cyclopedia of Corporations § 41.25 (Supp. 1987) (citing *McCain Foods, Inc. v. St. Pierre,* 463 A.2d 785 (Maine 1983)). There is no error in submitting the issue to the jury. *See, e.g., Mackey v. Burke,* 751 F.2d 322, 326–27 (10th Cir.1984); *Bucyrus–Erie Co. v. General Products Corp.,* 643 F.2d 413, 418 (6th Cir.1981) (reviewing jury instruction). The approach is particularly appropriate in tort cases where causation issues underlay the finding of corporate liability as well as negligence.

The jury was instructed on the law and purposes of the corporate alter-ego doctrine and that defendant Watters could be held liable for the corporation if they found plaintiff had proved three factors: (1) that he has consistently engaged in a course of conduct by which he has ignored the existence of the corporate entity or entities; (2) that he has, in fact, conducted business as an individual by exercising such paramount and personal control over the operations of the corporation that their corporate exist-

ence has been disregarded and their business interests and his own personal interests cannot be reasonably separated; and (3) that his domination of the corporation caused injury to the plaintiff so that to continue to recognize the existence of a separate corporate entity would promote injustice. Appendix, Jury Instruction 45; 3 Devitt, Blackmar and Wolff, Fed.J.Prac. § 76.05 (4th ed. 1987); *Fink v. Montgomery Elevator Co.,* 161 Colo. 342, 421 P.2d 735, 739 (1966); *Harding v. Lucero,* 721 P.2d 695, 698 (Colo.App.1986); *LaFond v. Basham,* 683 P.2d 367, 369 (Colo.App.1984).

At the request of defendants, the third element of our instruction modified the standard test to reflect the link of causation normally required to charge an individual with liability for the torts of his corporation. *See Bucyrus–Erie Co. v. General Products Corp.,* 643 F.2d 413, 418 (6th Cir.1981); Krendl and Krendl, *Piercing the Corporate Veil: Focusing the Inquiry,* 55 Den.L.J. 1, 21 (1978). The instruction on this issue included a list of factors to guide the jury in its consideration of these three elements. Appendix, Jury Instruction 46; *see also Bucyrus–Erie,* 643 F.2d at 418 (reviewing jury instruction).

Plaintiffs presented substantial evidence that defendant Watters disregarded corporate formalities in operating Wildhorn Ranch, Inc. In 1985, Watters regained ownership of the Wildhorn Ranch through foreclosure on its previous owner. Within days of the foreclosure, Watters formed Wildhorn Ranch, Inc. Defendant produced the Articles of Incorporation. Although Watters testified that he had deeded the Ranch over to the corporation, the deed could not be located. Although Watters testified that stock in the corporation had been purchased, and this fact was corroborated by the testimony of David Watters that he had paid $100,000 for his shares, no stock was issued and no record of the transaction was produced.

Once a week, the family held "formal" corporate board meetings at their home in

---

5. We note that Mr. Watters testimony of corporate operations indicated that corporate records compiled by Watters, his son, and secretary were in the corporate office at the family home in Rocky Ford, Colorado. These records were easily accessible to defendant Watters.

Rocky Ford, Colorado. Watters's wife attended some of these meetings, but Watters could not recall how often. No minutes were produced. Watters could not recall how often minutes were actually taken.

Watters operated several corporations out of his Rocky Ford, Colorado office. Debts of one corporation were frequently paid with funds from another corporation or from Watters's personal funds, depending upon the financial condition of a particular corporation when the debt came due. The bill of sale for the paddleboats in issue and Watters testimony proved that Watters purchased the boats with funds from a corporation unrelated to the Ranch, the Resort, or the homeowners association. *See* Defendants' Exhibit A. Although Watters testified that loans between the corporation were duly entered in the ledgers of each corporation by his secretary, no record of the loans or ledgers was produced. Testimony of the principals and employees regarding their own responsibilities and those of the various corporations and managers working at the Ranch demonstrated that the operation of the corporation was so muddled that no clear picture of accountability or organization can be drawn from the record.

While no one factor controls our analysis, the court must view the record as a whole to determine whether the corporate form has been used to defeat the public convenience. *Reader v. Dertina & Assoc. Marketing*, 693 P.2d 398, 399 (Colo. App.1984); *LaFond v. Basham*, 683 P.2d 367, 369 (Colo.App.1984); *Rosebud Corp. v. Boggio*, 39 Colo.App. 84, 561 P.2d 367, 371 (1977); *see also Bucyrus–Erie Co. v. General Products Corp.*, 643 F.2d 413, 418 (6th Cir.1981) (each case on equitable issue of corporate alter-ego is sui generis and reviewed on its own facts). The clear import of the entire record is that Watters consistently engaged in a course by which he ignored the existence of Wildhorn Ranch, Inc. and his other corporations.

Defendant Watters's domination and control of the corporation was reflected in the testimony of various employees of the Ranch. Testimony supported the perception of various employees that Watters was in complete control of the Ranch. For example, Watters testified that he could fire all of its employees or "clean house" if he found it necessary. Watters presented the sheriff's deputy investigating the accident with a business card which represented that Watters was the owner of Wildhorn Ranch, Inc. *See* Plaintiffs' Exhibit 129. Again, while the factors of note in the record may seem ambiguous when viewed in isolation, the record as a whole clearly establishes the fact that Watters was in control of Wildhorn Ranch, Inc., its board of directors, and employees.

Similarly, the issue of whether Watters domination of the company caused injury to the plaintiff was addressed through the testimony of Watters, Bretzke and the employees who repaired the boat. The jury found that Watters personally had acted negligently and that his negligence caused injury to the plaintiffs. According to this testimony (1) Watters purchased the boats for the Wildhorn Ranch, Inc. using funds from another corporation, (2) in taking this action for the corporation, Watters selected certain boats from a number of others he admitted were in disrepair, (3) Watters had knowledge that the boats leaked, became unstable, and required frequent removal from the lake to drain water from their hulls, (4) Watters inspected the boats after leaks had been patched and determined that the extra repairs requested by his employees were cosmetic, unnecessary, and costly, (5) Watters informed Les Bretzke of his decision that the boats should be returned to the water for use, (6) over the objections of the employees who had been making the repairs, Les Bretzke complied with Watters decision and ordered the boats returned to the water.

Defendant Watters's control of the finances, facilities and employees of the Wildhorn Ranch Resort, of Wildhorn Ranch, Inc. and of other corporations caused the injuries of which plaintiffs complain. To allow Watters to assert the fiction of a separate corporate entity as a means of avoiding liability when he has

consistently disregarded the corporate form would defeat public convenience.

## IV.

Finally, Defendant Watters contends that the jury's answers to special interrogatories demonstrate that instructing them on the alter-ego issue so confused the jury that he is entitled to a new trial. On similar grounds, defendant Wildhorn Ranch, Inc., moves for judgment notwithstanding the verdict, or in the alternative, for an altered or amended judgment.

On Special Verdict Form A, the jury was asked to answer three questions regarding the conduct of Wildhorn Ranch, Inc. First, the jury answered that the corporation had been negligent. Special Verdict Form A, question 1. Second, the jury found that the corporation's negligence had caused the damages claimed by plaintiffs. *Id.* at question 2. Third, the jury found that the conduct of the corporation was not only negligent, but willful and wanton. *Id.* at question 16. The jury was instructed that to determine the relative fault of the parties, the negligence of an individual would have to be attributed to that individual or to the corporation, without counting the negligence of a particular person twice. Appendix, Jury Instruction 44a. The jury was also instructed that if it found that defendant Wildhorn Ranch, Inc. was an alter-ego of defendant M.R. Watters under the law, the negligence of the corporation was attributable to M.R. Watters. Appendix, Jury Instruction 45. The jury found that the corporation was an alter-ego of Mr. Watters. Special Verdict Form A, question 5. In attributing percentages of fault to the various parties pursuant to Colorado law, the jury entered the numeral "0" in the blank provided for Wildhorn Ranch, Inc. *Id.* at question 12. The jury also awarded punitive damages against the corporation. Defendants argue that this finding is contrary to Colorado law. We have considered and reject defendants' interpretation of Colorado law.

■■■ The applicable Colorado statute provides: "In all civil actions in which damages are assessed by a jury for a wrong done to the person ... the jury, in addition to actual damages sustained by such party, may award him reasonable exemplary damages." C.R.S. § 13–21–102(1)(a). The statute is designed to distinguish exemplary damages from pure penalties by requiring that the plaintiff successfully prove an underlying claim for damages caused by a defendant's conduct. *Harding Glass Co., Inc. v. Jones,* 640 P.2d 1123, 1127 (Colo. 1982). The statute only allows for an award of exemplary damages "in conjunction with an underlying and independent 'civil action' in which actual damages are assessed for some legal wrong to the injured party." *Palmer v. A.H. Robins, Inc.,* 684 P.2d 187, 214 (Colo.1984). In the absence of a finding that the plaintiff has suffered damages, a defendant may not be penalized merely for wrongful conduct. *Defeyter v. Riley,* 671 P.2d 995, 998 (Colo. App.1983). Therefore, the statute is keyed to a finding that the defendant's conduct caused damages to the plaintiff. *Taylor v. Sandoval,* 442 F.Supp. 491, 495 (D.Colo. 1977).

■■■ Having found that the conduct of Wildhorn Ranch, Inc. was negligent, that its conduct caused the plaintiff to suffer actual damages, that its conduct was wanton and willful, the jury awarded exemplary damages against the corporation in accordance with Colorado law. *See Taylor,* 442 F.Supp. at 495–96. The jury found that the combined conduct of the parties had caused actual damages to the plaintiffs and fixed various amounts for those damages. The jury also applied Colorado comparative fault statutes in conjunction with the instruction on alter ego to attribute percentages of fault to each party. The jury clearly attributed the fault of the corporation to M.R. Watters as instructed by the court. The fact that a jury applies the law of corporate alter-ego to attribute the fault of a corporation to its principal does not defeat its finding that the corporation's conduct caused actual damages to a plaintiff. Furthermore, the verdict form demonstrates that the jury applied the courts instructions in the step-by-step manner required by the stipulated special interrogato-

ries. Accordingly, defendants' motions on this issue are denied.

## V.

Substantively, we have considered the totality of the evidence regarding the corporate form of Wildhorn Ranch, Inc. and of the conduct of M.R. Watters. We affirm the jury verdict on the question of corporate alter-ego. Furthermore, the record of defendant Watters conduct contains evidence on which a reasonable juror to find him personally liable for plaintiffs' injuries. Defendant M.R. Watters is liable to plaintiffs for his own negligence and that of defendant Wildhorn Ranch, Inc.

## ORDER

We have considered the totality of the objections raised in defendants' post-trial motions as well as the complete trial record. Neither the facts of this case nor the applicable law warrant new trial, judgment notwithstanding the verdict, or amended judgment.

IT IS HEREBY ORDERED that claims stated against all defendants in plaintiffs' amended complaint, filed July 26, 1988, pursuant to the Colorado premises liability statute, Colo.Rev.Stat. § 13–21–115, are STRICKEN; it is further

ORDERED that all post-trial motions filed by defendants are DENIED; it is further

ORDERED that the Motion of Defendant Les Bretzke for New Trial Pursuant to Rule 59 of the Federal Rules of Civil Procedure is DENIED; it is further

ORDERED that the Motion of Defendant M.R. Watters for Judgment Notwithstanding the Verdict, or, in the Alternative, for New Trial is DENIED; it is further

ORDERED that the Motion of Defendant Wildhorn Ranch, Inc. for Judgment Notwithstanding the Verdict and for Amended or Altered Judgment are DENIED; it is further

ORDERED that, in all particulars, the jury verdict on the question of corporate alter-ego attributing the negligence of Wildhorn Ranch, Inc. to M.R. Watters is affirmed; it is further

ORDERED that Motions of Defendants Les Bretzke and M.R. Watters for Stay of Judgment Pending Resolution of Post–Trial Motions Pursuant to Rule 62(b) of the Federal Rules of Civil Procedure are DENIED AS MOOT.

## MEMORANDUM OPINION AND ORDER ON POST–TRIAL MOTIONS

### APPENDIX

#### Instruction No. 44a

You must apportion negligence among the various parties, including the plaintiffs, the decedent, William Geringer, and the several defendants. In doing so, you must not count the negligence of an individual defendant twice. If you find any of the individual defendants negligent, you must determine whether such defendant's negligence was in his individual capacity or solely as an officer, agent or employee of a corporate defendant. If such defendant was individually negligent, then his negligence should be apportioned to him and not the corporation. If such defendant was negligent solely as an officer, agent or employee of a corporate defendant, then his negligence should be apportioned to the corporation and not to him.

#### INSTRUCTION NO. 45

The Plaintiff claims the Defendant, M.R. Watters, is the alter ego of Wildhorn Ranch, Inc. This amounts to a claim that those parties should be treated as being one and the same entity or person under the law so that the separate corporate existence of Wildhorn Ranch, Inc. should be disregarded and the Defendant, M.R. Watters, should be held personally liable for its obligations and liability, if any, for wrongdoing.

With respect to that issue you are instructed that a corporation, generally, is a separate legal entity authorized under the law to do business in its own right and on its own credit as distinguished from the credit and assets of other persons or corporations.

This principle imposes liability on the individual who uses the corporation merely as an instrument for conducting his own personal business or merely to accomplish some ulterior purpose.

Thus in the context of this case, where one is the principal stockholder of one or more corporations and personally conducts the corporation's business or manages its assets, he may be found individually liable for the corporate obligations if three factors are proved:

(1) that he has consistently engaged in a course of conduct by which he has ignored the existence of the corporate entity or entities;

(2) that he has, in fact, conducted business as an individual by exercising such paramount and personal control over the operations of the corporation or corporations that their corporate existence has been disregarded and their business interests and his own personal interests cannot be reasonably separated; and

(3) that his domination of the corporation caused injury to the plaintiff so that to continue to recognize the existence of a separate corporate entity would promote injustice.

If you find that plaintiff has proven each of these three propositions by a preponderance of the evidence, then the foreperson shall complete Special Verdict Form B, answering "yes" the preponderance of the evidence shows that Wildhorn Ranch Inc. was the alter-ego of defendant M.R. Watters according to the law as stated in these instructions; or if you find that plaintiff has not proven each of these three propositions then your answer must be "no" the preponderance of the evidence does not show that Wildhorn Ranch Inc. was the alter-ego of defendant M.R. Watters. You shall all then sign the form.

### INSTRUCTION NO. 46

In applying the test set out in Instruction 45 to determine whether plaintiff has established these three elements, you may consider the factors listed below together with all the evidence in the case.

(1) whether a corporation is operated as a separate entity;

(2) commingling of funds and other assets;

(3) failure to maintain adequate corporate records or minutes;

(4) the nature of a corporation's ownership and control;

(5) absence of corporate assets and under capitalization;

(6) use of a corporation as a facade for operations of the dominant stockholder or stockholders;

(7) disregard of legal formalities and failure to maintain an arms-length relationship among related entities;

(8) non-functioning of other officers or directors; and

(9) diversion of the corporation's funds or assets to noncorporate assets.

However, the mere fact that a person loans money to a corporation of which he is a shareholder, or that another corporation in which he owns stock loans money to that corporation, is not, by itself sufficient to establish that the elements in Instruction No. 45 have been proved.