James C. GIEBINK and Roxanne Johnson–Giebink, as parents and natural guardians of Michael Giebink, a minor; James C. Giebink, individually and Roxanne Johnson Giebink, individually, Plaintiffs,

v.

Robert FISCHER, as parent and natural guardian of Kevin Fischer, a minor; Robert Fischer, an individual and Aspen Skiing Corporation, a Colorado corporation, aka Aspen Skiing Company, and Jennifer Catherine Lang, Defendants.

Civ. A. No. 88–A–766.

United States District Court, D. Colorado.

March 22, 1989.

Scott R. Larson, Scott R. Larson, P.C., Denver, Colo., for plaintiffs.

Thomas E. Hames, Inman, Erickson & Flynn, P.C., Denver, Colo., for Fischer defendants.

Paul D. Nelson, Hancock, Rothert & Bunshoft, San Francisco, Cal., Scott S. Barker, Mary D. Metzger, Perry L. Glantz, Holland & Hart, Englewood, Colo., for defendants ASC & Lang.

## MEMORANDUM OPINION AND ORDER ON MOTION TO DISMISS

ARRAJ, District Judge.

This matter is before the court on defendants Aspen Skiing Company's ("ASC") and Jennifer Catherine Lang's ("Lang") Motion to dismiss the Third, Fifth, Sixth, Seventh and Portions of the Fourth Claim For Relief Contained in Plaintiffs' Second Amended Complaint. This is the second motion to dismiss filed in this case.

In order to understand the procedural posture of this motion, it is helpful to first set out the factual events upon which plaintiffs' claims arose. According to plaintiffs, defendant Kevin Fischer, minor son of defendant Robert Fischer, collided with plaintiff Michael Giebink ("Michael") in a skiing accident at Snowmass Ski Area on or about March 29, 1988. As a result, Michael was seriously injured. At the time of the accident it is alleged that Michael was an invited guest and customer at Snowmass Mountain Resort which is owned by ASC.

Plaintiffs' Third Claim in its Second Amended Complaint is based upon ASC's alleged negligent maintenance of the premises. Plaintiffs' Fourth Claim is apparently pled under C.R.S. 13–21–115, alleging that ASC "deliberately failed to exercise reasonable care to protect persons such as the minor Plaintiff, Michael Giebink, against dangers which were not ordinarily present on the aforesaid property despite the fact that Defendant actually knew or should have known of said dangers." Second Amended Complaint ¶ 3 at 4. Plaintiffs' Seventh Claim is also based upon the condi-

tion of ASC's premises under an attractive nuisance theory.

Plaintiffs further claim that Michael was enrolled in the Snowmass Ski School at the time of his accident. Defendant Jennifer Lang, an employee of ASC, was the skiing instructor. Plaintiffs' Fifth Claim asserts that ASC is liable for the negligent supervision of Michael by its agents and/or employees during the course of Michael's ski lesson. Plaintiffs' Sixth Claim is against Lang, individually, for negligent supervision and instruction of Michael while enrolled in the ski school.

In its first motion to dismiss, defendant ASC moved to dismiss those of plaintiffs' claims which were pled under theories of common law negligence. Defendant argued that C.R.S. § 13–21–115, the Colorado premises liability statute, abrogated common law claims and that the statute was plaintiffs' exclusive means of remedy. Plaintiffs opposed dismissal on several grounds, including their contention that C.R.S. § 13–21–115 was unconstitutional. At a hearing held on July 15, 1988, this court denied ASC's first motion without prejudice. Certification of the constitutional questions raised by plaintiffs was made to the Colorado Supreme Court on November 1, 1988. The Supreme Court declined to answer the certified questions on December 12, 1988.

The present motion to dismiss was filed January 24, 1989. In it, defendants move for dismissal of the Third, Fifth, Sixth and Seventh Claims and portions of the Fourth claim as contained in plaintiffs' Second Amended Complaint. Defendants renew their argument that C.R.S. § 13–21–115 is plaintiffs' exclusive remedy. They conclude that because § 13–21–115 abrogates common law claims against landowners, that plaintiffs' Third, Fifth, and Sixth Claims, founded on common law negligence theories, fail to state a claim upon which relief can be granted. Defendants also urge this court to dismiss the Seventh Claim because it is admitted that Michael was not a trespasser, and, according to defendants, the doctrine of attractive nuisance only applies to trespassers. Finally, defendants argue that the Fourth Claim should be dismissed to the extent that, contrary to § 13–21–115, the complaint implies that liability may be imposed against a landowner for failure to exercise reasonable care to protect an invited plaintiff against dangers of which it "should have known."

## ANALYSIS

I) "Conflict" between the Colorado Ski Safety Act and Premises Liability Statute.

It is plaintiffs' position that the premises liability statute, C.R.S. § 13–21–115, does not apply to this case involving a skiing accident because the Colorado Ski Safety Act ("Ski Safety Act"), C.R.S. §§ 33–44–101 to –111, is a specific statute which applies to ski areas and prevails over the general premises liability statute which applies to "any civil action brought against a landowner." § 13–21–115(2). Plaintiffs contend that the Ski Safety Act authorizes negligence actions, and to the extent that § 13–21–115 abrogates common law negligence claims there is a conflict. Consequently, plaintiffs conclude that the specific statute prevails and that their negligence claims are viable under the Ski Safety Act.

My analysis begins with C.R.S. § 2–4–205, which provides in full:

"If a general provision conflicts with a special or local provision, it shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail."

It is the court's duty to construe statutes to avoid inconsistency if it is reasonably possible. *Marshall v. City of Golden*, 147 Colo. 521, 363 P.2d 650, 652 (1961). In the instant case the two statutes may reasonably be interpreted to avoid conflict. They apply to different activities and conditions.

■ The Ski Safety Act has an express purpose "to further define the legal respon-

sibilities of ski area operators[1] and their agents and employees; to define the responsibilities of skiers using such ski areas; and to define the rights and liabilities existing between the skier and the ski area operator and between skiers." C.R.S. § 33-44-102. The only responsibilities imposed upon operators by the Ski Safety Act relate to posting signs, §§ 33-44-106, 33-44-107, and providing lighting and other conspicuous markings for snow-grooming vehicles and snowmobiles. C.R.S. § 33-44-108. "A violation by a ski area operator of any requirement of this article or any rule or regulation promulgated by the passenger tramway safety board pursuant to section 25-5-710(1)(a), C.R.S., shall, to the extent such violation causes injury to any person or damage to property, constitute negligence on the part of such operator." C.R.S. § 33-44-104(2). Thus, the duties imposed upon ski operators by the Ski Safety Act, a breach of which constitutes actionable negligence, concern a very limited number of specifically identified activities and conditions.

The Ski Safety Act imposes specific duties upon ski operators as a means of protecting skiers against dangerous conditions that are commonly present at ski areas. *See Pizza v. Wolf Creek Ski Development Corp.*, 711 P.2d 671, 678 (Colo.1985) ("the legislature has attempted to identify those dangers which can reasonably be eliminated or controlled by the ski area operator."). In general, it does not protect against dangers arising from conditions or activities which are not ordinarily present at ski areas.[2]

In contrast, the premises liability statute imposes liability against all landowners for conditions, or activities conducted on, or circumstances existing on his or her property. C.R.S. § 13-21-115(2). "If the landowner has expressly or impliedly invited the plaintiff onto the real property for the purposes of the landowner, the plaintiff may recover for damages caused by the landowner's deliberate failure to exercise reasonable care to protect against dangers which are *not ordinarily present on property of the type involved* and of which he actually knew." C.R.S. § 13-21-115(3)(c) (emphasis added).[3] Thus, it is clear that the statutes are directed at two different types of dangerous activities and conditions, ordinary and out of the ordinary.

In *Calvert v. Aspen Skiing Company*, 700 F.Supp. 520 (D.Colo.1988), the court held that the two statutes did conflict and that the specific Ski Safety Act prevailed. Accordingly, the court denied the defendant's motion to dismiss plaintiff's negligence claims. The conflict, according to the court, was that the premises liability statute abrogates all common law claims for negligence while the Ski Safety Act does not. *Id.* at 522. However, the two statutes may be interpreted consistently in light of the different scope of activities and conditions addressed by each.

It would be contrary to the Legislature's intent to expose ski operators to greater liability than other landowners. To sustain plaintiffs' claims founded on negligence would have exactly that effect. The Colorado Supreme Court has addressed at least one of the Legislature's purposes in enacting the Ski Safety Act, stating:

> Indisputably, the ski industry is an important part of the Colorado economy.... The legislative history indicates that one of the purposes underlying the [presumption provided in § 33-44-109(2) which imposes a presumption that the

---

1. "'Ski area operator' means 'operator' as defined in section 25-5-702(3), C.R.S., and any person, partnership, corporation, or other commercial entity having operational responsibility for any ski areas, including an agency of this state or a political subdivision thereof." C.R.S. § 33-44-103(7).

2. Conceivably, a conflict could exist between the two statutes, as in a case where a ski operator fails to mark a man-made structure as required by § 33-44-107(7). If the structure was one not

ordinarily present at a ski area, a conflict would exist. However, the instant case does not present the court with this situation.

3. It is the judge's duty to determine which subsection of § 13-21-115(3) is applicable in each action. § 13-21-115(4). The parties do not dispute that if the premises liability statute does indeed control, that § 13-21-115(3)(c) is the applicable subsection.

responsibility for collisions by skiers with any person, natural object, or man-made structure marked in accordance with the Act is solely that of the skier and not the ski area operator] is to reduce the number of frivolous lawsuits and, accordingly, the rapidly rising cost of liability insurance accruing to ski area operators.

*Pizza,* 711 P.2d at 679 (citation omitted). The Legislature intended to protect ski operators from the increasing burden of litigation by passing the Ski Safety Act. There is no reason to believe that it intended to single out ski operators as a subgroup of landowners who would be held to a higher standard of care.

■ While the Ski Safety Act does not abrogate common law causes of action for negligence, neither does it expressly or implicitly create a general negligence action for all injuries sustained at ski areas. In the present case plaintiffs have not alleged any facts that would be actionable as a violation of the specific duties imposed upon ski operators by the Ski Safety Act. Their common law negligence claims, therefore, cannot be sustained under the umbrella of the Act.[4]

## II) Premises Liability Statute

I must now consider to what extent the premises liability statute applies to plaintiffs' claims. The language of the statute appears to embrace a broad range of conditions and activities that exist or are conducted on a landowner's property. C.R.S. § 13–21–115(2). However, the court in *Geringer v. Wildhorn Ranch, Inc.,* 706 F.Supp. 1442 (D.Colo.1988), noted that "[t]he statutory classification 'activities conducted or circumstances existing on such property' must be read narrowly with careful regard for the intent of the legislature to re-establish common law distinctions in the law of premises liability." *Id.* at 1446.

In *Geringer,* the plaintiff brought a wrongful death action for the death of her husband and son in a drowning accident which occurred at the defendant's guest ranch. The two drowned during a boating accident involving a peddleboat supplied by the defendant corporation. The court struck plaintiff's claims founded on the premises liability statute. Following a jury verdict in favor of the plaintiff, the defendants made motions for judgment notwithstanding the verdict, for new trial, and for amended judgment. Defendants contended that they were prejudiced by the trial court's failure to instruct the jury in accordance with the premises liability statute which provides a more difficult standard for plaintiffs to overcome. Defendants argued that the premises liability statute was plaintiff's exclusive remedy. The court disagreed:

> Traditionally, the activities for which a defendant is liable as a landowner are inherently related to the land—construction, landscaping or other activities treating the land....
>
> The causation evidence in this case focused on defendants' maintenance of the peddleboats and on defendants' knowledge of their condition following purported repairs. The duty litigated in this case was that of a supplier of chattel to provide its user with chattel that was not defective.... The statute does not reflect an intention to extend the application of premises liability doctrine to the negligent supply of chattel by a landowner.

*Id.* at 1446. The distinction between activities "inherently related to the land" and other activities which do not fall within the scope of the premises liability statute logically follows from the court's conclusion that "[t]he statute does not establish a feudal realm of absolute protection from liability for simple negligence based only on a defendant's status as a landowner."

§ 13–21–115(2) (emphasis added). Accordingly, the premises liability statute, which expressly abrogates common law claims, would prevail even if the two statutes did conflict. C.R.S. § 2–4–205.

---

4. Defendants pose a second argument which leads to the same conclusion. The premises liability statute was adopted subsequent to the Ski Safety Act and contains the "manifest intent" to apply to *"any* civil action." C.R.S.

*Id.* at 1446.[5]

█ In the present case plaintiff's Fifth and Sixth Claims are based upon the alleged negligent supervision of Michael during the course of his skiing instruction. Instructing people in the sport of skiing is not inherently related to the land. Therefore, plaintiffs' Fifth and Sixth Claims should not be dismissed.

█ On the other hand, plaintiffs' Third Claim is founded on defendant's negligent maintenance of *conditions* at the ski area. Conditions of property clearly fall within the scope of the premises liability statute. C.R.S. § 13–21–115(2). Therefore, the Third Claim must be dismissed for failure to state a claim upon which relief can be granted.

III) Constitutionality of the Premises Liability Statute

█ Plaintiffs contest the constitutionality of C.R.S. § 13–21–115 on several grounds. Statutes are presumed constitutional and the plaintiff, as the party attacking the statute, must prove the statute unconstitutional beyond a reasonable doubt. *Bedford Motors, Inc. v. Harris*, 714 P.2d 489, 491 (Colo.1986).

█ Plaintiffs argue that the phrase "deliberate failure to exercise reasonable care," as provided in C.R.S. § 13–21–115(3)(c), is unconstitutionally vague. It is plaintiffs' position that the terms "deliberate" and "reasonable care" are contradictory. I disagree.

The premises liability statute is basically an economic regulation, designed to limit the liability of landowners. Therefore, the vagueness standard which must be applied in this case is less exacting than in a case involving a penal statute or laws regulating first amendment rights. *Pizza*, 711 P.2d at 676.

"Deliberate" is a common word used frequently in every-day experience and readily understood. "The probable legislative intent in using such a word may be deter-mined by resorting to a standard dictionary." *Pizza*, at 676. *Webster's New World Dictionary* (2nd ed.1972) defines "deliberate" as "carefully thought out and formed, or done on purpose; premeditated; careful in considering, judging, or deciding; not rash or hasty." "Reasonable care" is obviously a common tort standard associated with negligence which requires a degree of care which an ordinarily prudent person would exercise under the same or similar circumstances. *See Safeway Stores, Inc. v. Langdon*, 187 Colo. 425, 532 P.2d 337, 339 (1975). Thus, in order to incur liability under § 13–21–115(3)(c), a landowner must purposely fail to act as an ordinarily prudent person would in a like situation.

█ Plaintiffs also argue that the statute denies them a right to a remedy for injury as guaranteed by Article II, Section 6 of the Colorado Constitution. Article II, Section 6 provides:

> Courts of justice shall be open to every person, and a speedy remedy afforded for every injury to person, property or character; and right and justice should be administered without sale, denial or delay.

As noted in *Goldberg v. Musim*, 162 Colo. 461, 427 P.2d 698, 702 (1967), this provision is a mandate to the judiciary, not the legislature. "The power of the legislature to abolish substantive common law rights including those vouch-safed by the common law of England, in order to attain a permissible legislative object, has already been decided by this court...." *Id.* 427 P.2d at 703. Thus, the Legislature's enactment of § 13–21–115 does not violate the Colorado Constitution.

█ Next plaintiffs argue that the statute violates Article V, Section 25 of the Colorado Constitution which prohibits the general assembly from passing special laws for the benefit of any corporation, association or individuals. The constitutional inhibition against class legislation arises "when the effect of the law is to prohibit a carrying on of a legitimate busi-

---

5. To hold otherwise would shield all types of negligent activities from the negligence standard, such as in a case where a doctor negligent-ly treats a patient at his privately owned clinic. This result could not have been intended by the Legislature.

ness or occupation while allowing other businesses or occupations not reasonably to be distinguished from those prohibited to be carried on freely." *Dunbar v. Hoffman*, 171 Colo. 481, 468 P.2d 742, 745 (1970). However, a statute is not special when "it is general and uniform in its operation upon all in like situation." *McCarty v. Goldstein*, 151 Colo. 154, 376 P.2d 691, 693 (1962). The premises liability statute applies uniformly to all landowners to limit liability for injuries resulting from conditions and activities which are inherently related to ownership of property. It is, therefore, not a special law.

■ Plaintiffs' equal protection challenge also fails. The statutory classification need only be reasonably related to a legitimate state objective in order to pass constitutional muster because no fundamental right or suspect class is involved. *Yarbro v. Hilton Hotels Corp.*, 655 P.2d 822, 827 (Colo.1982). In this case the Legislature could have reasonably enacted the premises liability statute as a means of reducing liability of landowners for certain injuries occurring on their property. The Colorado Supreme Court has recognized that the Legislature has a legitimate interest in protecting the state economy. *Pizza*, 711 P.2d at 679. Providing limited protection to landowners is reasonably related to that end.

## IV) Plaintiffs' Fourth Claim

■ Defendants argue that plaintiffs' Fourth Claim should be dismissed to the extent that it alleges that defendant ASC is liable for failure to exercise reasonable care to protect Michael against dangers of which it "should have known." [6] Plaintiffs' Fourth Claim is based on § 13–21–115(3)(c), which, by its express terms, requires actual knowledge. Plaintiffs' Fourth Claim is dismissed to the extent that it seeks to impose liability for dangers of which ASC should have known.

## V) Attractive Nuisance

■ Finally, defendants move to dismiss plaintiffs' Seventh Claim which is founded upon the doctrine of attractive nuisance [7], arguing that it only applies to situations involving trespassers, and that according to plaintiffs' allegations Michael was not a trespasser.[8] In an attempt to strike a reasonable compromise between the conflicting interests between the freedom of land use and the protection of children, courts have recognized the attractive nuisance doctrine. The doctrine imposes a higher standard of care on landowners toward children than would otherwise be owed to a trespasser.[9]

The purpose of the doctrine is to protect children from hazards which tend to attract them onto property. By allowing the doctrine to survive the enactment of the premises liability statute, the Legislature evidenced an intent to give children under the age of fourteen protection beyond that which is now available to other persons. This protection logically should extend to children, regardless of their status as a trespasser, licensee, or invitee. *See* W. Prosser & W. Keeton, *Prosser and Keeton on Torts*, § 59 at 402 (5th ed. 1984) ("In any case where the child could recover if he were a trespasser, he can recover at least as well when he is a licensee or an invitee

---

6. Plaintiffs' Fourth Claim alleges that ASC is liable because it "deliberately failed to exercise reasonable care to protect persons such as the minor Plaintiff, Michael Giebink, against dangers which were not ordinarily present on the aforesaid property despite the fact that Defendant actually knew or should have known of said dangers."

7. In their Seventh Claim, plaintiffs accuse defendant ASC of maintaining an unreasonably dangerous and hazardous condition in the form of a roll jump. The roll jump is made entirely of earth. Skiers use it to perform aerial maneuvers.

8. The Colorado Legislature clearly provided that attractive nuisance, as it applies to persons under fourteen years of age, is not abrogated by the premises liability statute. C.R.S. § 13–21–115(2).

9. Prior to the Colorado Supreme Court's decision in *Mile High Fence Co. v. Radovich*, 175 Colo. 537, 489 P.2d 308 (1971), landowners generally owed no duty to make or keep property safe for trespassers. *See Staley v. Security Athletic Association*, 152 Colo. 19, 380 P.2d 53, 54 (1963).

on the premises."); *Restatement (Second) of Torts* § 343B (1977) ("In any case where a possessor of land would be subject to liability to a child for physical harm caused by a condition on the land if the child were a trespasser, the possessor is subject to liability if the child is a licensee or an invitee."); *State v. Juengel,* 15 Ariz.App. 495, 489 P.2d 869, 873 (1971). *See also CJI–Civ.2d* 12:6A (Supp.1988).

However, plaintiffs' Seventh Claim fails for several other reasons. Plaintiffs' counsel made it clear at the March 17, 1989 hearing that it was not Michael that was lured to the accident scene by the roll jump; it was Kevin Fischer, the other youth allegedly involved in the collision, who was drawn to the location by the roll jump. The doctrine of attractive nuisance simply does not apply under these facts.

A second, related argument, also leads me to the conclusion that the doctrine should not be applied in this case. The doctrine requires that the object be unnatural and unusual. This limitation protects landowners from liability for conditions which are present on their property of which children should reasonably recognize the associated dangers. *See Esquibel v. City and County of Denver,* 112 Colo. 546, 151 P.2d 757, 759 (1944) (attractive nuisance doctrine did not apply where child was injured while climbing on automobile bodies piled in an unstable heap). The *Esquibel* court cited the *Restatement of Torts* § 339 Comment on Clause (c):

A possessor of land is ... under a duty to keep so much of his land as he knows to be subject to the trespasses of young children, free from artificial conditions which involve an unreasonable risk of death or serious bodily harm to them. This does not require him to keep his land free from conditions which even young children are likely to observe and the full extent of the risk involved in which they are likely to realize. The purpose of the duty is to protect children from dangers which they are unlikely to appreciate and not to protect them against harm resulting from their own immature recklessness in the case of known danger. Therefore, even though

the condition is one which the possessor should realize to be such that young children are unlikely to realize the full extent of the danger of meddling with it or encountering it, the possessor is not subject to liability to a child who in fact discovers the condition and appreciates the full risk involved therein but none the less chooses to encounter it out of recklessness or bravado.

Other conditions which have been held to be common and obvious include an artificial pond, *Phipps v. Mitze,* 116 Colo. 288, 180 P.2d 233 (1947), an icy slope used for sledding, *Ostroski v. Mount Prospect Shop–Rite, Inc.,* 94 N.J.Super. 374, 228 A.2d 545 (1967), a sand pile, *Knight v. Kaiser Co.,* 48 Cal.2d 778, 312 P.2d 1089 (1957), and a steep bluff, *Zagar v. Union Pacific R. Co.,* 113 Kan. 240, 214 P. 107 (1923).

Defendants in this case had a right to expect youngsters who were actively participating in the sport of skiing to understand the dangers of conditions such as the roll jump. The dangers associated with the roll jump are apparent, not latent. It is not an "unusual condition." Therefore, the doctrine of attractive nuisance is not available to the plaintiffs.

## CONCLUSION

Accordingly,

IT IS ORDERED that plaintiffs' Third and Seventh Claims be, and the same hereby are, DISMISSED with prejudice.

IT IS FURTHER ORDERED that plaintiffs' Fourth Claim, to the extent that it seeks to impose liability for dangers of which ASC 'should have known,' be, and the same hereby is, DISMISSED with prejudice.

IT IS FURTHER ORDERED that defendants' motion to dismiss to the extent that it requests dismissal of plaintiffs' Fifth and Sixth Claims be, and the same hereby is, DENIED.