No. 15,101.

DENVER TRAMWAY CORPORATION *v.* CALLAHAN.

(150 P. [2d] 798)

Decided June 19, 1944. Rehearing denied July 24, 1944.

Mr. W. A. ALEXANDER, Mr. CECIL M. DRAPER, for plaintiff in error.

Mr. HARRY A. FEDOR, Mr. MILTON MORRIS, for defendant in error.

*In Department.*

MR. JUSTICE BAKKE delivered the opinion of the court.

ROBERT B. CALLAHAN, defendant in error, plaintiff below, brought this action against plaintiff in error, the Denver Tramway Corporation and the City and County of Denver, praying damages in the sum of $5,000 claimed to have resulted by reason of the death of his son James, who was drowned when he dropped into a deep hole in the Platte river on premises under the control of defendant corporation. After issues joined, the matter was dismissed as to the City and County of Denver, but tried to a jury as to the tramway company. The jury returned a verdict in favor of the plaintiff in the sum of $800, and judgment was entered accordingly. The company seeks reversal on a writ of error.

The drowning occurred on August 4, 1940, when James, approximately eleven years of age, in company with two other boys, went down to the river to play near a turbine intake plant operated by the company. The plant is located on a bank of the Platte river, where, since 1901, the company has taken water for purposes of condensation to be used in connection with its adjoin-

ing power plant. To make the water more easily available, the company maintains a V-shaped drag, operated on a cable, which, as occasion requires, is moved back and forth in front of the plant to pull the sand away from the basins to a depth of about ten to twelve feet. August 4th was Sunday, and the drag had been used the Wednesday before. When the boys reached the intake plant they removed their clothing, and James told one of the other boys he was going into the water, saying: "I think I can swim." At the place he entered, the water was shallow and he waded out to a cable by which he attempted to cross said intake plant by pulling himself hand over hand. Shortly thereafter he lost his hold on the cable and dropped into the water over the deep excavation. He was unable to swim and was drowned, his body being recovered a short time later.

In bringing the action, plaintiff adopted the theory that the company maintained the premises as an "attractive nuisance" to the children in the community, and in doing so failed to warn said children, and particularly James, of the dangerous condition thereof.

No good purpose would be served by considering the numerous points specified as constituting error, because the affirmance of the judgment depends on whether the case of *Denver v. Stutzman,* 95 Colo. 165, 33 P. (2d) 1071, is controlling. The Trial Court very frankly stated that if it were not for that case, he would have granted the company's motion for a directed verdict. It is not difficult to understand why the Trial Court took such a position, because the physical facts of the two cases are strikingly similar, in that death in both was caused by drowning in a deep hole made by dredging machines, used by defendants in each case in the same general locality on the Platte river, in the City of Denver; however, there are at least two vital distinctions in the law applicable that may not have been called to the attention of the Trial Court, and the Court had no opportunity to examine the record in the Stutzman case.

■ ■ In the first place, while the opinion in the Stutzman case does not specifically so state, we think it apparent that the judgment was not predicated on the attractive-nuisance doctrine, and while the statement that "boys and girls were in the habit of similarly wading and playing in the stream" might be suggestive of the doctrine, it is well known that streams and other bodies of water in their natural state, while attractive to children, do not form the basis for an attractive-nuisance contention. It will be noted that the facts in Stutzman case are, by the opinion, placed in that category of cases where a city is liable for damage resulting from its "negligence in the planning, construction or maintenance of sewers and sewage systems," and that nowhere in the complaint, the instructions, or the opinion, is the attractive-nuisance doctrine mentioned. Furthermore, while we state in the opinion in the Stutzman case that the court is "not required to determine possible limitations or qualifications of the doctrine announced in the Windsor company case" (*Windsor Reservoir & Canal Co. v. Smith,* 92 Colo. 464, 21 P. (2d) 1116, and 82 Colo. 497, 261 Pac. 872), it definitely appears from the complaint and instructions that the "trap" theory set forth in the Windsor cases was the basis of the action. That the Windsor cases are not controlling, is evident from the following statement appearing in the opinion in the first case: "If the boy entered in violation of warnings either written or otherwise he was a trespasser and was entitled to no care." In the case at bar, it is established beyond question that James had been warned to stay away from the premises by employees of the company, by his own father within a week preceding the accident, and by his playmate, Harry Longshore, only an instant before he stepped into the water.

In the second place, in the Stutzman case we specifically approved challenged instruction No. 8 given therein, which reads as follows: "You are instructed that

people have a right to go upon public property of the City and County of Denver without an invitation, and that the City is under no obligation to keep that property in repair so as to make it safe for everybody. But the City is liable if it negligently constructs and maintains a dangerous condition, which cannot be seen, without notifying the public who is in the habit of using that public property." This instruction took the case out of the attractive-nuisance theory (45 C.J. 771 [13]), and placed the duty of the city on a plane with a municipality negligently maintaining a pond in a public park, and it has been specifically held that such a situation is not within the attractive-nuisance doctrine. *Capp v. St. Louis,* 251 Mo. 345, 158 S.W. 616. In the Capp case the court said: "Much confusion has been injected into this class of cases by applying to it the doctrine applicable to the 'turntable' cases. That rule has no application whatever to this case, or to the class to which it belongs. In this class, the injury occurred and of necessity must occur at a place where the injured party had both the legal and moral right to be, while in the turntable cases the injury occurred and of necessity must have occurred on private property, a place where the injured person had no legal right to be, but was induced to go by an attractive piece of machinery or other matters equally attractive to children * * *. In the consideration of this case, care should be taken so as not to confuse the principles of law governing it with those controlling the turntable cases, for the obvious reason that one might be entitled to a recovery in this class and not in that." See, also, *Peters v. Bowman,* 115 Cal. 345, 47 Pac. 113; *Barnhart v. Chicago, Milwaukee & St. Paul Ry. Co.,* 89 Wash. 304, 154 Pac. 441; *McCall v. McCallie,* 48 Ga. App. 99, 171 S.E. 843; *Williams v. Kansas City C.C. & St. Joseph Ry. Co.,* 222 Mo. App. 865, 6 S.W. (2d) 48. It is obvious that instruction No. 8, supra, could not properly have been given in the case at bar, because there is no question but that the boy was a trespasser on the private

property of defendant, unless he was "invited" by an "attractive nuisance," as recognized by our decisions.

The attractive nuisance relied upon in this case is the turbine intake plant owned by defendant, which, according to the complaint, consists of "a series of cables, embankments, dams, projections, guy wires, pipes, screens, spillways, dredging machinery and power machinery used in connection with the operation of said turbine intake plant," and it is contended that defendants "negligently and carelessly left all of said premises and turbine intake plant unfenced, unguarded and un-enclosed so that many children, including the child of this plaintiff, were in the habit * * * of using the premises for a place of play * * *."

■ The law is well established that, "In order that liability may be imposed under the attractive nuisance doctrine, the thing or condition which attracted the child must have been the proximate cause of the injury." 45 C.J. 784. Not one of the things mentioned in the language quoted from the complaint, supra, was the proximate cause of the boy's death, and should we adopt the quoted language as a definition of an attractive nuisance, it might well include every factory, industrial plant and railroad yard in the state, that happened to be built on the bank of a river.

■ That the trend in this field of the law is to limit, not extend, the doctrine of the "turn-table" or "attractive-nuisance" cases also is well established (45 C.J. 784), as is indicated by our recent opinion in the case of *Simkins v. Dowis*, 100 Colo. 355, 67 P. (2d) 627, and cases therein cited.

However, "There is conflict in the decisions upon this subject, some courts holding in favor of the liability of the private owner, and others ruling against it. Where the land of a private owner is in a thickly settled city, adjacent to a public street or alley, and he has upon it, or suffers to be upon it, dangerous machinery or a dangerous pit or pond of water, or any other dangerous

agency, at a point thereon near such public street or alley, of such a character as to be attractive to children of tender years incapable of exercising ordinary care, and he is aware or has notice of its attractions for children of that class, we think that he is under obligations to use reasonable care to protect them from injury when coming upon said premises, even though they may be technical trespassers. To charge him with such an obligation under such circustances is merely to apply the well known maxim, *sic utere tuo ut alienum non laedas* [So use your own as not to injure another's property]. It is true, as a general rule, that a party guilty of negligence is not liable if he does not owe the duty which he has neglected to the person claiming damages. (*Williams v. C. & A. R.R. Co.*, 135 Ill. 491 [26 N.E. 661].) But, though the private owner may owe no duty to an adult under the facts stated, the cases, known as the 'turntable' cases, hold that such duty is due from him to a child of tender years." *City of Pekin v. McMahon,* 154 Ill. 141, 39 N.E. 484.

As to this, we think in the case at bar, as was the opinion of the Trial Court, the company had done all that could reasonably have been expected of it in the way of fencing the premises and giving warning; so, even assuming that there might have been liability under the McMahon case, supra, and the case of *Price v. Atchison Water Co.*, 58 Kan. 551, 50 Pac. 450, quoted in *Capp v. St. Louis, supra,* we distinguish them from the case at bar for the reason just mentioned.

Other distinctions recognized by the authorities could be made between this case and the Stutzman case, but what we have said indicates that that case is not controlling here. We agree with the view expressed by the Trial Court that if the Stutzman case is not controlling, and we hold it is not, defendant company was not liable.

Judgment reversed.

MR. JUSTICE BURKE and MR. JUSTICE HILLIARD concur.