2013 CO 72

S.W., a minor by and through his parents and next friends, David and Rhonda Wacker; David Wacker; and Rhonda Wacker, Petitioners,

v.

TOWERS BOAT CLUB, INC., Respondent.

Supreme Court Case No. 12SC391

Supreme Court of Colorado.

December 23, 2013

Attorneys for Petitioners: Purvis Gray, LLP, John A. Purvis, Boulder, Colorado.

Attorneys for Respondent: Senter Goldfarb & Rice, L.L.C., Arthur J. Kutzer, Joel A. Palmer, Denver, Colorado.

JUSTICE RICE delivered the Opinion of the Court.

¶ 1 We granted certiorari to consider an issue of first impression: whether, under

Colorado's premises liability statute, section 13–21–115, C.R.S. (2013), the attractive nuisance doctrine applies only to trespassing children but not to licensees or invitees. We hold that the doctrine permits all children, regardless of their classification, to bring a claim for attractive nuisance. We therefore reverse the judgment of the court of appeals because it erroneously held that the attractive nuisance doctrine only protects trespassing children. On remand, the trial court must consider the merits of S.W.'s attractive nuisance claim.

## I. Facts and Procedural History

¶ 2 During the summer of 2008, S.W.—who was eleven years old at the time—attended a private party held by Respondent Towers Boat Club, Inc. ("Towers") as a guest of one of the boat club's member families. While S.W. and two other children were playing on a rented, inflatable bungee run,[1] a gust of wind hurled the structure somewhere between 15 and 75 feet into the air and between 100 and 200 yards across the property before it crashed back to earth. As a result of this incident, S.W. allegedly sustained traumatic brain injuries, numerous areas of brain hemorrhage, a fractured left leg, and multiple fractures of his right arm.

¶ 3 Petitioners S.W. and his parents, David and Rhonda Wacker (collectively "the Wackers"), sued three entities: Towers, bungee run manufacturer Blaster Bouncer Jumping Castles, Inc. ("Blaster Bouncer"), and landowner North Poudre Irrigation Company ("North Poudre"). The Wackers then settled with Blaster Bouncer and North Poudre, leaving only Towers, which had rented the land from North Poudre and thus also qualified as a landowner under section 13–21–115(1). The Wackers brought three claims against Towers: (1) premises liability; (2) negligence; and (3) attractive nuisance.[2]

¶ 4 Towers moved for summary judgment. The trial court granted Towers' motion on the Wackers' claims of premises liability and negligence, finding that S.W. was a licensee and that Towers thus did not breach any duty owed to him; however, it denied summary judgment on the attractive nuisance claim. Towers then filed a motion for reconsideration, arguing that because S.W. was a licensee, he could not assert a claim for attractive nuisance. The trial court granted that motion, reasoning that "the attractive nuisance doctrine, as incorporated into [section] 13–21–115, applies only to trespassing children and not to 'licensees.'"

¶ 5 The Wackers appealed, arguing that (1) child licensees could bring a claim for attractive nuisance at common law, and (2) precluding S.W. from raising an attractive nuisance claim on account of his licensee status violated his constitutional right to equal protection. The court of appeals affirmed the trial court's ruling. *S.W. ex rel. Wacker v. Towers Boat Club, Inc.*, 2012 COA 77, ¶ 2, 318 P.3d 38. After reviewing section 13–21–115, the court of appeals concluded that "the common law doctrine of attractive nuisance applies only to trespassing children." *Id.* at ¶ 27. The court of appeals also rejected the Wackers' equal protection argument, holding that "there is no constitutional infirmity in treating [a trespassing] child preferentially to ... a mere licensee." *Id.* at ¶ 42.

¶ 6 In a special concurrence, Judge Gabriel opined that the majority should not have addressed the constitutional issue. *Id.* at ¶ 45 (Gabriel, J., specially concurring). Judge Gabriel observed that "even under [the Wackers'] view of the attractive nuisance doctrine, the attraction must have enticed the child to enter the landowner's property." *Id.*

---

1. A bungee run is an inflatable, three-lane structure in which children harness themselves into one end and then race to the opposite end. The bungee run cables slow the children down as they run, eventually pulling them back to the start.

2. Technically, the Wackers' complaint against Towers only included claims for premises liability and negligence—it did not specifically refer to the attractive nuisance doctrine. In their proposed trial management order, however, the Wackers indicated that they intended to pursue recovery on a theory of attractive nuisance. After reviewing a motion to strike the attractive nuisance claim, the trial court found that even though the complaint did not specifically identify the attractive nuisance doctrine, it nevertheless contained sufficient allegations to state a claim for attractive nuisance.

at ¶ 48. He thus concluded that "even if the attractive nuisance doctrine could be read to apply to invitees, licensees, and trespassers alike, as a matter of law, [the Wackers] cannot prevail on their attractive nuisance claim." *Id.*

¶ 7 We granted certiorari to address an issue of first impression: whether, under the premises liability statute, section 13–21–115, the attractive nuisance doctrine and its protections are applicable only to trespassing children but not to children on premises as licensees or invitees.

## II. Standard of Review

■ ¶ 8 We review de novo the court of appeals' decision affirming the trial court's grant of summary judgment. *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 819 (Colo.2004). In this case, the propriety of the trial court's decision granting summary judgment turns on its interpretation of section 13–21–115, which we also review de novo. *See Vigil v. Franklin*, 103 P.3d 322, 327 (Colo.2004).

## III. Analysis

■ ¶ 9 This case turns on the interplay between Colorado's premises liability statute, section 13–21–115, and the common law doctrine of attractive nuisance. Section 13–21–115 provides a comprehensive scheme for determining a landowner's liability to persons injured on his land. Under the terms of the statute, persons on another's land are classified as either trespassers, licensees, or invitees.[3] The extent of a person's right to recover from the landowner hinges on that person's classification within this explicit trichotomy. *See* § 13–21–115(3). The statute ranks these classifications into a logical hierarchy, as it explicitly provides that "the circumstances under which a licensee may re-cover include all of the circumstances under which a trespasser could recover and ... the circumstances under which an invitee may recover include all of the circumstances under which a trespasser or a licensee could recover." § 13–21–115(3.5). The statute further provides that it "shall not be construed to abrogate the doctrine of attractive nuisance as applied to persons under fourteen years of age." § 13–21–115(2). We thus begin our analysis by examining the attractive nuisance doctrine as it developed at common law.

### A. The Common Law Doctrine of Attractive Nuisance

¶ 10 Because section 13–21–115 specifically incorporates the doctrine of attractive nuisance, our first step is to examine the precise contours of the doctrine as it developed at common law. Our survey reveals that, although the doctrine primarily featured cases involving child trespassers, its application did not turn on a child's classification within the trespasser-licensee-invitee trichotomy. Rather, the linchpin of the attractive nuisance doctrine was the intuitive concept that children, due to their youth and impulsive behavior, are instinctively drawn to certain objects and are thus prone to placing themselves in danger. For this reason, the doctrine imposed a duty on landowners to protect *all* children from certain attractions on their land, whether they entered the land through trespass or invitation. Therefore, all children—regardless of classification within the trichotomy—could bring a claim for attractive nuisance at common law.

¶ 11 The earliest articulation of the attractive nuisance doctrine in the United States appears in *Sioux City & P.R. Co. v. Stout*, 84 U.S. (17 Wall.) 657, 21 L.Ed. 745 (1873) (commonly dubbed the "Turntable Case"). In that case, a six-year-old boy wan-

---

3. Specifically, section 13–21–115(5) defines the three classifications as follows:

(a) "Invitee" means a person who enters or remains on the land of another to transact business in which the parties are mutually interested or who enters or remains on such land in response to the landowner's express or implied representation that the public is requested, expected, or intended to enter or remain.

(b) "Licensee" means a person who enters or remains on the land of another for the licensee's own convenience or to advance his own interests, pursuant to the landowner's permission or consent. "Licensee" includes a social guest.

(c) "Trespasser" means a person who enters or remains on the land of another without the landowner's consent.

dered onto a railroad company's property and injured his foot on a turntable.[4] *Id.* at 657–58. The U.S. Supreme Court, considering the boy's age, held that the railroad company could be found negligent, noting that "while a railway company is not bound to the same degree of care in regard to mere strangers who are unlawfully upon its premises that it owes to passengers conveyed by it, it is not exempt from responsibility to such strangers for injuries arising from its negligence or from its tortious acts." *Id.* at 661. Thus, although the Court recognized that the boy was a trespasser, that fact did not underpin its holding. Rather, the critical factor was that the boy, in being attracted to the turntable, behaved as children typically do. *See id.* at 660 ("The care and caution required of a child is according to his maturity and capacity only. . . .").

¶ 12 At the turn of the century, the attractive nuisance doctrine made its way to Colorado. In *Kopplekom v. Colorado Cement–Pipe Co.*, 16 Colo.App. 274, 275–76, 64 P. 1047, 1047–48 (1901), a child was crushed and killed while playing with a large piece of cement piping. The court of appeals, noting that the piping "was a temptation to children who had not arrived at years of discretion and judgment," reversed the trial court's dismissal of the plaintiff's complaint. *Id.* at 276, 64 P. at 1048. Applying the rationale from the Turntable Case, the court stated:

> If an owner sees fit to keep on his premises something that is an attraction and allurement to the natural instincts of childhood, the law . . . imposes upon him the corresponding duty to take reasonable precautions to prevent the intrusion of children, *or to protect from personal injury such as may be attracted thereby.*

*Id.* at 278, 64 P. at 1048 (emphasis added); *see also Denver City Tramway Co. v. Nicholas*, 35 Colo. 462, 470, 84 P. 813, 815–16 (1906) (quoting this language from *Kopplekom*). Crucially, the court deemed this to be the rule of law *even if* the child was a trespasser; it did not suggest that a child's status as a trespasser was in any way a prerequisite for the attractive nuisance doctrine to apply. *See Kopplekom*, 16 Colo.App.

at 278, 64 P. at 1048 (stating that "[i]f it be said that . . . the piping was upon private premises, that the children were trespassers, and that they were not upon the land by invitation or consent," then the outcome would remain the same because "[c]hildren, wherever they go, must be expected to act upon childish instincts and impulses") (internal quotation marks omitted). This case makes plain that a landowner's duty to children at common law stemmed from the "attraction and allurement" of objects he maintained on his premises—whether a child was a trespasser was immaterial.

¶ 13 Nevertheless, the court of appeals determined that our precedent restricted attractive nuisance claims solely to child trespassers. *S.W. ex rel. Wacker v. Towers Boat Club, Inc.*, 2012 COA 77, ¶ 27, 318 P.3d 38. We recognize that a narrow reading of isolated phrases from a trio of Colorado cases— each relied upon by the court of appeals— may give rise to this mistaken impression. *See, e.g., Niernberg, by Niernberg v. Gavin*, 123 Colo. 1, 3, 224 P.2d 215, 216 (1950) ("[T]he attractive-nuisance doctrine is only an exception to the general rule limiting the liability of landowners as to trespassers. . . ."); *Hayko v. Colo. & Utah Coal Co.*, 77 Colo. 143, 146, 235 P. 373, 374 (1925), *overruled in part by Mile High Fence Co. v. Radovich*, 175 Colo. 537, 489 P.2d 308 (1971) ("While [a landowner] owes a duty to one invited, and some attractive agencies may amount to an invitation to a child, . . . such an agency must invite to trespass and not merely after trespass, and must be an unusual thing, unusually, extraordinarily attractive, not an ordinary matter. . . ."); *Esquibel v. City & Cnty. of Denver*, 112 Colo. 546, 550, 151 P.2d 757, 759 (1944), *overruled in part by Mile High Fence*, 175 Colo. 537, 489 P.2d 308 (quoting *Hayko* ).

¶ 14 Closer scrutiny reveals, however, that while each of these cases involved trespassing children, we never rooted our holdings in the children's status as trespassers. In *Niernberg*, we declared the issue of attractive nuisance to be "academic" because the landowner observed the trespassing child plaintiff playing near the dangerous area and

---

4. A turntable is a large revolving platform that railroad companies use to rotate trains.

warned him to stay away, meaning the doctrine simply did not apply. 123 Colo. at 3–4, 224 P.2d at 216. And in *Esquibel*, after the child plaintiff injured herself while trespassing in a junkyard, we held that the landowner could not be deemed liable because the junkyard was not sufficiently appealing to children to qualify as an attractive nuisance. 112 Colo. at 550, 151 P.2d at 759 ("Neither do we believe that this collection of junk satisfies the test announced [in *Hayko*] as an 'unusual thing.'"). In both cases, the plaintiff's status as a trespasser was irrelevant.

¶ 15 The *Hayko* case is even more telling. There, the child plaintiff entered the defendant's shack and discovered a box of dynamite blasting caps, which exploded after he opened them, severely injuring his fingers. 77 Colo. at 144, 235 P. at 374. The trial court directed a verdict for the defendant, and we affirmed, holding that the plaintiff could not recover under the attractive nuisance doctrine. *Id.* at 145, 235 P. at 374. Specifically, we stated that although a landowner "owes a duty to one invited, and some attractive agencies may amount to an invitation to a child," that duty only applies to trespassing children if the nuisance at issue is "an unusual thing, unusually, extraordinarily attractive, not an ordinary matter." *Id.* at 146, 235 P. at 374. Because the defendant's shack was "an ordinary matter" rather than an unusually attractive object, we forbade recovery under the attractive nuisance doctrine. We further stated that the doctrine only applies where the landowner "maintain[s] an attraction which entices to trespass, not merely entices one after he has become a trespasser." *Id.* at 145, 235 P. at 374.

¶ 16 *Hayko*, then, specified that in order for a *trespassing* child to recover under the attractive nuisance doctrine, he must have observed the attractive object prior to his trespass. Nowhere in our opinion, however, did we expressly limit the doctrine's application to trespassers. Rather, *Hayko* and its progeny stand for the self-evident proposition that a landowner should not be held liable in the event that a child trespasses onto his land and *then* discovers an attractive nuisance. Such a rule is sound, as otherwise landowners would be vulnerable to liability regardless of how carefully they attempted to obscure attractive objects from a child's eye. *See id.* at 145, 235 P. at 374 ("We know of no general legal duty, either to children or adults who enter without invitation, express or implied, to keep dangerous things from one's land or to use care about them. . . ."). But the purported implication that non-trespassing children are somehow prohibited from bringing attractive nuisance claims because they were not enticed to trespass simply does not follow.[5]

¶ 17 Our review of the common law doctrine of attractive nuisance thus illustrates that the doctrine was never intended to apply exclusively to trespassers. Accordingly, we conclude that all children—regardless of their classification within the trespasser-licensee-invitee trichotomy—could bring an attractive nuisance claim at common law.

¶ 18 This conclusion, however, does not end our inquiry. Because the General Assembly specifically incorporated the attractive nuisance doctrine into section 13–21–115, our task is not only to map the contours of the doctrine but also to consider its application in light of the statute. To do this, we trace the development of section 13–21–115, beginning with our 1971 decision in *Mile High Fence Co. v. Radovich*, 175 Colo. 537, 489 P.2d 308, *superseded by statute*, § 13–21–115, *as recognized in Lakeview Assocs., Ltd. v. Maes*, 907 P.2d 580 (Colo.1995).

**B. The Attractive Nuisance Doctrine and Section 13–21–115**

¶ 19 In *Mile High Fence*, we abolished the trespasser-licensee-invitee trichotomy and

5. In his special concurrence below, Judge Gabriel misconstrued *Hayko* along these lines. *See Wacker*, ¶ 48 (Gabriel, J., specially concurring) ("It has long been settled in Colorado that for the attractive nuisance doctrine to apply, the attraction must have enticed the child to trespass; it is not enough if the attraction enticed the child only after he or she became a trespasser.") (citing *Hayko*, 77 Colo. at 145, 235 P. at 375). Therefore, according to Judge Gabriel, because S.W. was not attracted to the bungee run until after he had already entered the property as a licensee, the bungee run cannot qualify as an attractive nuisance. *Id.* As we have illustrated, this interpretation does not comport with our precedent.

mandated that landowners instead be held to a more general reasonable person standard. 175 Colo. at 548, 489 P.2d at 314. In 1986, in response to *Mile High Fence*, the General Assembly enacted section 13–21–115, which reinstated the trichotomy. *Vigil v. Franklin*, 103 P.3d 322, 326 (Colo.2004). In *Gallegos v. Phipps*, 779 P.2d 856, 862 (Colo.1989), however, we observed that the statute "impose[d] on landowners a higher standard of care with respect to a licensee than an invitee"; we therefore declared it unconstitutional, holding that "[s]uch an inverted hierarchy of duties bears no rational relationship to a legitimate governmental interest," *id.* We further stated that "any logical hierarchy of duties requires that a landowner take more precautions to protect someone he has invited on the land for the landowner's own purposes (and thus at least impliedly given an assurance of safety), than a person whose presence is only suffered." *Id.* at 862–63. Then, in 1990, in response to *Gallegos,* the General Assembly amended section 13–21–115 to its current form. *Vigil,* 103 P.3d at 326. The newly drafted statute retained the trichotomy but addressed our constitutional concerns by explicitly providing a clear hierarchy:

> It is the intent of the general assembly ... that the circumstances under which a licensee may recover include all of the circumstances under which a trespasser could recover and that the circumstances under which an invitee may recover include all of the circumstances under which a trespasser or a licensee could recover.

§ 13–21–115(3.5).

¶ 20 This explicit statement of legislative intent reinforces our conclusion that all children, not just trespassers, may recover under the attractive nuisance doctrine. We recognize, of course, that the statutory provision sustaining the attractive nuisance doctrine appears in subsection (2) of section 13–21–115 ("This subsection (2) shall not be construed to abrogate the doctrine of attractive nuisance as applied to persons under fourteen years of age."), whereas the hierarchical provision is found in subsection (3.5). But in interpreting the statute, we must read it "as a whole, construing each provision consistently and in harmony with the overall statutory design." *Whitaker v. People,* 48 P.3d 555, 558 (Colo.2002). It thus defies comprehension to suggest that, when the General Assembly amended section 13–21–115 in order to mollify our constitutional concerns as expressed in *Gallegos,* it created a logical hierarchy solely for premises liability claims but simultaneously perpetuated an inverted hierarchy for attractive nuisance claims. *See Frazier v. People,* 90 P.3d 807, 811 (Colo.2004) ("A statutory interpretation leading to an illogical or absurd result will not be followed."). On the contrary, a harmonious reading of section 13–21–115 as a whole buttresses our conclusion that all children, regardless of classification, may recover under the attractive nuisance doctrine.

¶ 21 In disposing of the Wackers' equal protection challenge, the court of appeals attempted to circumvent this inescapable conclusion when it held that "a child who is enticed to trespass on the land by an attractive nuisance is accorded the preferential treatment reserved in the law for invitees." *S.W. ex rel. Wacker v. Towers Boat Club, Inc.,* 2012 COA 77, ¶ 42, 318 P.3d 38. That is, the court of appeals suggested that trespassing children lured by an attractive nuisance are *legally transformed* from trespassers into invitees. *Id.* at ¶¶ 37–38. Therefore, according to the court of appeals, allowing trespassers but not licensees to bring attractive nuisance claims does not violate the logical hierarchy mandated by section 13–21–115 because those trespassers are actually treated as invitees under the law. *See id.* at ¶ 39.

¶ 22 We find no support in our case law for this proposition. The court of appeals cites to a dictum in *Denver Tramway Corp. v. Callahan,* 112 Colo. 460, 464–65, 150 P.2d 798, 799–800 (1944), in which we stated that "there is no question but that the [child plaintiff] was a trespasser on the private property of defendant, unless he was 'invited' by an 'attractive nuisance.'" The court of appeals also cites *Kopplekom v. Colorado Cement–Pipe Co.,* 16 Colo.App. 274, 277, 64 P. 1047, 1047–48 (1901), suggesting that this case "cit[ed] with approval cases from other jurisdictions that treat children enticed by an

attractive nuisance to trespass as invitees." *Wacker*, ¶ 37. Yet neither of these cases contains language that even remotely resembles a formal pronouncement suggesting that trespassing plaintiffs are somehow converted into invitees in any legal sense. In *Denver Tramway*, the child plaintiff drowned while playing in a river located near the defendant's turbine intake plant. 112 Colo. at 461, 150 P.2d at 798. In declining to apply the attractive nuisance doctrine, we made little mention of the plaintiff's status as a trespasser and instead simply recognized that the plant was not sufficiently attractive to support an attractive nuisance claim. *Id.* at 465, 150 P.2d at 800 ("[S]hould we adopt the [complaint's description of the plant] as a definition of an attractive nuisance, it might well include every factory, industrial plant and railroad yard in the state, that happened to be built on the bank of a river."). And *Kopplekom*, as we have already discussed, *see supra* ¶12, focused not on the plaintiff's classification but on the "attraction and allurement" of the nuisance itself.[6]

■ ¶ 23 Thus, in fixating on our precedent's use of the words "invited" or "invitation," the court of appeals spun a semantic distinction into a legal rule that heretofore did not exist. Our earlier use of these terms did not legally convert plaintiffs from trespassers into invitees; rather, such language merely functioned as synonyms for analogous terms (such as "attraction" or "allurement") that also express the well-recognized concept that children are drawn to certain dangerous objects because of their immaturity. Therefore, regardless of the specific term used to describe the attraction, all of our cases reinforce the central precept underlying an attractive nuisance claim: that the child plaintiff must have been attracted to the object at issue, regardless of his legal classification.

¶ 24 Accordingly, we hold that all children—regardless of their classification as trespassers, licensees, or invitees—may bring a claim under the attractive nuisance doctrine.

## IV. Conclusion

¶ 25 Because we hold that a child licensee may bring a claim for attractive nuisance, the judgment of the court of appeals is reversed. On remand, the trial court must consider the merits of S.W.'s attractive nuisance claim.

JUSTICE EID dissents.

JUSTICE MÁRQUEZ dissents, and JUSTICE COATS joins in the dissent.

JUSTICE EID, dissenting.

¶ 26 I agree with the majority that we have not limited our attractive nuisance doctrine to trespassers. Maj. op. ¶ 14. However, the majority's holding does not help the plaintiffs in this case. That is because attractive nuisance plaintiffs must, among other things, satisfy the test for licensees. The majority implicitly recognizes this fact when it states that the court of appeals erred in concluding that the landowner's duty under the doctrine is that owed to an invitee. Maj. op. ¶¶ 21–23. I would take the majority's rationale to its logical conclusion and hold that, because the plaintiffs' licensee claim in this case was dismissed in a ruling not appealed, their attractive nuisance claim necessarily fails. Accordingly, I respectfully dissent from the majority's opinion permitting the claim to go forward.

¶ 27 This court has not opined on whether the plaintiff in an attractive nuisance case should be treated as a licensee or invitee.[1]

---

6. Notably, the word "invitee" appears in neither of these decisions. This further distinguishes these opinions from an out-of-state case also cited by the court of appeals, *Concrete Constr., Inc., of Lake Worth v. Petterson*, 216 So.2d 221, 222 (Fla.1968), in which the Florida Supreme Court suggested that a child "who enters upon another's property in response to a special attraction is classified as an implied invitee." Such an unambiguous statement regarding a nuisance's effect on a child's classification is wholly absent from our attractive nuisance case law.

1. We have held that the doctrine requires that the attraction "must have operated on the child before he trespassed," thereby enticing the child to trespass; that a thing "cannot be classified as the attraction" which the child does not see before trespassing; and that "the attractive agency must be an unusual thing, of unusual attraction, not an ordinary thing." *See Hayko v. Colo. & Utah Coal Co.*, 77 Colo. 143, 145–46, 235 P. 373, 374 (Colo.1925).

However, the Second Restatement, in addition to imposing other requirements,[2] treats the attractive nuisance plaintiff as a licensee, imposing liability on a landowner only when the landowner "knows or has reason to know" of the danger. Restatement (Second) of Torts § 339 (1965) (limiting liability under the attractive nuisance doctrine to cases where the landowner "knows or has reason to know" of a dangerous condition); § 342 (limiting liability to licensees to cases where the possessor of the land "knows or has reason to know" of a dangerous condition).[3] The Restatement further makes clear that this "knows or has reason to know" formulation imposes no duty on the landowner to discover or inspect for dangers on the property. See id., § 339 cmt. h (1965) (under the "knows or has reason to know" formulation, "[t]he possessor is under no duty to inspect or police his land to discover whether such [dangerous] conditions exist"). This is in contrast to the duty owed an invitee, which does impose such a duty to inspect. See id., § 343 (landowner may be liable for harm caused to an invitee by a condition on the land "only if" he "knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees"). Taking guidance from the Restatement, I would find that attractive nuisance plaintiffs in Colorado must demonstrate, among other things, that the landowner violated the duty owed to licensees, which, under our statute, requires a plaintiff to show that the landowner "actually knew" of the danger. § 13–21–115(3)(b), C.R.S. (2013).[4]

¶ 28 By stating that the court of appeals erred in treating the attractive nuisance plaintiff as an invitee, maj. op. ¶ 22, the majority opinion supports this conclusion. I would simply take the majority's analysis one step further and recognize that an attractive nuisance plaintiff is to be treated as a licensee. In my view, under this standard, the plaintiffs in this case have no claim. The plaintiffs' complaint alleges liability only under an invitee standard. See Complaint at ¶¶ 25–26 (alleging invitee status and that the defendant "should have known" of the dangerous condition posed by the improperly secured bungee run); and Trial Court's March 24, 2011 Order at 4 (finding, with regard to the plaintiffs' attractive nuisance claim, that there was a genuine issue of

---

**2.** "A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if (a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and (b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and (d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and (e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children." Restatement (Second) of Torts, § 339 (1965).

**3.** Dozens of courts have adopted the Restatement's formulation of liability for attractive nuisance. See, e.g., Thomas v. Hansen, 2013 WL 4590634 (D.Utah 2013); Hill v. National Grid, 11 A.3d 110 (R.I.2011); Craig v. Bailey Bros. Realty, Inc., 304 Ga.App. 794, 697 S.E.2d 888 (2010); MacVane v. S.D. Warren Co., LLC, 641 F.Supp.2d 54 (D.Me.2009); McDaniels v. Sovereign Homes,

2006 WL 3365499 (Ohio App. 10 Dist.2006); Butler v. Newark County Country Club, 909 A.2d 111 (Del.Supr.2006); Lieding v. Blackledge, 2004 WL 1078981 (Mich.App.2004); Mason v. City of Mt. Sterling, 122 S.W.3d 500 (Ky.2003).

**4.** As we have recognized, in section 13–21–115(3)(b), the General Assembly departed from the common law's "know or reason to know" formulation of licensee by adopting an actual knowledge standard. Larrieu v. Best Buy Stores, L.P., 2013 CO 38, ¶ 29, 303 P.3d 558, 565, n. 9 (recognizing that our statute "represents a substantial departure from the common law, where landowners owed licensees a duty of care regardless of whether they had actual or constructive knowledge of dangers"). Section 13–21–115(3)(b)'s actual knowledge formulation is read in conjunction with section 13–21–115(2)'s instruction that the premises liability statute "shall not be construed to abrogate the doctrine of attractive nuisance as applied to persons under fourteen years of age." The legislature thus appears to have preserved the doctrine of attractive nuisance where the landowner had actual knowledge of the danger. The distinction between actual and constructive knowledge would not impact this case in any event because the plaintiffs' attractive nuisance claim alleges only that the defendant should have known of the danger.

material fact as to whether the defendant "should have known [that] there was a dangerous condition or activity at the reservoir").[5] Further, the plaintiffs' licensee claim was dismissed on summary judgment on the ground that there was no evidence that the defendant actually knew that the bungee run constituted a danger, and this ruling has not been appealed. The plaintiffs in this case thus have no viable claim under the attractive nuisance doctrine. Accordingly, I respectfully dissent from the majority's opinion allowing their attractive nuisance claim to go forward.

JUSTICE MÁRQUEZ, dissenting.

¶ 29 I agree with the majority that this case turns on the interplay between Colorado's premises liability statute, section 13–21–115, C.R.S. (2013), and the common law doctrine of attractive nuisance. Maj. op. ¶ 9. Section 13–21–115(2) provides that the premises liability statute "shall not be construed to abrogate the doctrine of attractive nuisance as applied to persons under fourteen years of age." Thus, whether S.W., a child licensee, may bring a claim for attractive nuisance turns on whether that common law doctrine applied to child licensees. The majority holds that the common law doctrine of attractive nuisance imposed a duty on landowners to protect *all* children from certain attractions on their land, whether they entered the land through trespass or invitation." Maj. op. ¶ 10. The majority therefore concludes that "all children—regardless of classification [as trespasser, licensee, or invitee]—could bring a claim for attractive nuisance at common law." *Id.* I disagree. As the court of appeals correctly recognized, in Colorado, the common law doctrine served to protect children who were injured by an "attractive nuisance" that enticed them to trespass onto the landowner's property. Because I believe the majority misconstrues the doctrine and, in so doing, misreads our prior case law, I respectfully dissent.

## I.

¶ 30 Under the common law, the standard of care owed by a landowner depended on the injured party's status as an invitee, licensee, or trespasser. *Mile High Fence Co. v. Radovich*, 175 Colo. 537, 541, 489 P.2d 308, 311 (1971). With respect to trespassers, landowners owed no duty to make or keep their premises safe. *Gallegos v. Phipps*, 779 P.2d 856, 860 (Colo.1989) (citing *Staley v. Sec. Athletic Ass'n*, 152 Colo. 19, 21, 380 P.2d 53, 54 (1963)); 62 Am.Jur.2d *Premises Liability* § 283 ("[T]he general rule is that a landowner owes no duty to a trespasser except to refrain from causing willful and wanton injury . . . ."). The harshness of this general rule led to the development of several exceptions, the best known of which is the attractive nuisance doctrine, which was created as a humanitarian response to protect children who were injured or killed by trespassing onto private property and playing with artificial conditions left out by the landowner. 62 Am.Jur.2d § 283. As this exception to the general rule has been described in Colorado, "[t]respassing children were generally treated like trespassing adults unless the attractive-nuisance doctrine was applicable. The attractive-nuisance doctrine developed to allow recovery for a trespassing child where a landowner (1) keeps an artificial condition on his premises that is an attraction and allurement to a child, (2) involves an unreasonable risk of injury, and (3) is located in a place where it might reasonably be expected that children are likely to congregate." 7 John W. Grund et al., *Colo. Prac., Personal Injury Torts and Insurance* § 19:3 (3d ed. 2012).

¶ 31 Under this exception, children who are drawn to trespass onto a landowner's property by an unusual and enticing condition are treated as though they are invitees, not trespassers. *See, e.g.,* Dan B. Dobbs, *The Law of Torts* § 236, at 609 (2000) (discussing the origin of the attractive nuisance rule: "The court [in *Keffe v. Milwaukee & St. Paul Ry. Co.*, 21 Minn. 207 (1875) ] compared the allure of the turntable to strong-scented meat used to attract and trap dogs. For this reason the trespass was to be forgiven and the child treated as an invitee.");

---

5. The trial court later revised this portion of its order when it determined that the plaintiffs could

not bring an attractive nuisance claim because they were licensees, not trespassers.

*Denver Tramway Corp. v. Callahan,* 112 Colo. 460, 464–65, 150 P.2d 798, 799–800 (1944) ("[T]here is no question but that the boy was a trespasser on the private property of defendant, unless he was 'invited' by an 'attractive nuisance,' as recognized by our decisions."). This doctrine, including its applicability to child trespassers, is reflected in secondary sources and this court's case law.

## A.

¶ 32 In 1934, the Restatement of Torts described the doctrine of attractive nuisance by explaining that a land possessor "is subject to liability for bodily harm to young children *trespassing* thereon caused by a structure or other artificial condition" maintained on the land, where four conditions are met: (1) the land possessor knows (or should know) that "children are likely to trespass" at the place where the artificial condition is maintained; (2) the land possessor knows and realizes (or should know and realize) that the artificial condition involves an unreasonable risk of death or serious bodily harm to trespassing children; (3) the children, because of their youth, do not discover the condition or realize the risk involved in "intermeddling" with the condition or in coming within the area made dangerous by the condition; and (4) the utility to the land possessor of maintaining the condition is slight compared to the risk it poses to young children. Restatement (First) of Torts § 339 (1934) (emphasis added).

¶ 33 The majority of American jurisdictions adopted the attractive nuisance doctrine as defined by the Restatement. 4 Stuart M. Speiser et al., *The American Law of Torts* § 14:73 (2009) ("The vast majority of American jurisdictions now take the firm position that—so long as certain conditions or prerequisites are met—a land owner or occupant may be held liable for injuries, etc., to trespassing children caused by artificial conditions highly dangerous . . . ."). Similarly, Prosser and Keeton, noting the frequency with which the Restatement provision is cited and generally accepted by courts, have described this Restatement provision as "one of its most effective single sections." W.P. Keeton et al., *Prosser and Keeton on the Law of Torts* § 59 (5th ed. 1984).

## B.

¶ 34 Colorado case law confirms that the common law doctrine of attractive nuisance applies only to trespassing children. Indeed, the majority acknowledges that a trio of cases relied on by the court of appeals reflect this view. Maj. op. ¶ 13 (citing *Niernberg, by Niernberg v. Gavin,* 123 Colo. 1, 224 P.2d 215 (1950); *Hayko v. Colo. & Utah Coal Co.,* 77 Colo. 143, 235 P. 373 (1925), *overruled in part by Mile High Fence,* 175 Colo. 537, 489 P.2d 308; *Esquibel v. City & Cnty. of Denver,* 112 Colo. 546, 151 P.2d 757 (1944), *overruled in part by Mile High Fence,* 175 Colo. 537, 489 P.2d 308). The majority nevertheless asserts that "while each of these cases involved trespassing children, we never rooted our holdings in the children's status as trespassers." Maj. op. 14. Relying on these decisions, the majority concludes that trespass is not a requirement of the doctrine. In so doing, the majority misreads our case law. Although it is true that the outcome of those cases did not hinge on the children's status as trespassers, that is because their status as trespassers was never at issue. Instead, we declined to apply the doctrine of attractive nuisance in those cases because some other requirement of the doctrine was not met.

¶ 35 In *Niernberg,* this court explained that the attractive nuisance doctrine is "an exception to the general rule limiting the liability of landowners as to *trespassers.*" 123 Colo. at 3–4, 224 P.2d at 216 (emphasis added). Although this court ultimately did not apply the doctrine in that case, our reasoning began with the premise that the doctrine applies only to child trespassers who are attracted onto the premises by a "dangerous trap" or "artificial device" that is left "open and unguarded." *See id.* at 3, 224 P.2d at 216. In that case, undisputed evidence established that the landowner had seen the child plaintiff playing near the tar barrel that the landowner was cleaning, and that he repeatedly warned and attempted to protect the child from the hot tar that ultimately injured him. *Id.* at 2–3, 224 P.2d at 215–16. Under those facts, this court did not

apply the attractive nuisance doctrine. Instead, it relied on the principle that a landowner is liable for injuries resulting from "active negligence to *trespassers whose presence is known*" (such as the child in that case), and that the landowner is required to use ordinary care to avoid injury to such trespassers. *Id.* at 4, 224 P.2d at 216 (emphasis added). At most, the "evidence raised an issue of the exercise of reasonable care by defendant," which the trial court properly resolved against the plaintiff. *Id.* at 4, 224 P.2d at 216.

¶ 36 Similarly, this court did not apply the attractive nuisance doctrine in *Hayko* because the child trespasser in that case was not enticed to trespass by the box of dynamite caps that ultimately injured him. 77 Colo. at 145, 235 P. at 374. Again, our analysis confirmed the general rule that landowners are not liable to trespassers, and the exception to that rule embodied in the attractive nuisance doctrine: "[T]he owner of land owes no duty to a mere trespasser, young or old. While he owes a duty to one invited, and some attractive agencies may amount to an invitation to a child, yet *such an agency must invite to trespass* and not merely after trespass...." *Id.* at 146, 235 P. at 374 (emphasis added). In *Hayko*, the injured child and his playmate were attracted onto the land by a mining shack, which we concluded, as a matter of law, was not an "unusual attraction." *Id.* at 146, 235 P. at 374. The child plaintiff "could not see the box of caps till he had trespassed." *Id.* at 145, 235 P. at 374. Thus, because the alleged attractive agency, a box of dynamite caps, did not invite the trespass, the doctrine did not apply to the injured child.[1]

¶ 37 Moreover, contrary to the majority's assertion, we acknowledged in *Hayko* that the attractive nuisance doctrine applies only to trespassers: "The plaintiff was a trespasser to whom there was owing no duty, unless under the attractive nuisance doctrine...." *Id.* at 145, 235 P. at 374; *see also Esquibel,*

112 Colo. at 549–50, 151 P.2d at 759 (holding that the defendant was not liable for the child plaintiff's injuries resulting from climbing on old automobiles on the defendant's land because the child trespassed on the land due to its availability and proximity to her home, and not because of the attraction of the automobiles).

¶ 38 As the court of appeals correctly reasoned, these cases confirm the general rule that a landowner owes no heightened duty of care to a trespasser and that in Colorado, the doctrine only applies to protect a child who is injured by an attractive nuisance that enticed the child to trespass. The majority erroneously concludes that, because the resolution of these cases did not hinge on the child's status as a trespasser, the doctrine therefore must apply regardless of the child's classification within the trespasser-licensee-invitee trichotomy. *See* maj. op. ¶ 10. The majority misreads these cases. In each of these cases, this court ultimately declined to apply the doctrine because, *despite the child's trespass,* some other prong of the doctrine was not met.

¶ 39 The majority's misreading of our case law may stem from a fundamental misunderstanding of the first United States case to articulate the attractive nuisance doctrine, *Sioux City & P.R. Co. v. Stout,* 84 U.S. (17 Wall.) 657, 21 L.Ed. 745 (1873). In that case, a six-year-old boy trespassed on railroad property and was injured when his foot was crushed while playing on an unsecured turntable used to rotate trains. *Id.* at 657–58. The majority suggests that although the United States Supreme Court recognized that the plaintiff was a trespasser, "that fact did not underpin its holding." Maj. op. 11. Instead, according to the majority, the critical factor in the decision was that the boy behaved as a typical child. *Id.* I disagree. The fact that the boy "behaved as a typical child" served as the court's rationale for finding an exception to the general rule that a

---

[1] I note that Colorado is among a minority of jurisdictions that applies the doctrine only where the child is attracted onto the land by the condition which injured him. Restatement (Second) of Torts § 339 cmt. e (1965). Thus, I agree with Judge Gabriel that the attractive nuisance claim in this case fails in any event because "it is undisputed that the bungee run attraction did not entice SW to enter the landowner's property." *S.W. ex rel. Wacker v. Towers Boat Club, Inc.,* 2012 COA 77, ¶ 48, 318 P.3d 38 (Gabriel, J., specially concurring).

landowner owes no duty of care to trespassers.

¶ 40 Despite the majority's novel interpretation, *Stout* is widely recognized as "mark[ing] the advent of the doctrine in the United States." Speiser et al., *The American Law of Torts* § 14:73; W.P. Keeton et al., *Prosser and Keeton on the Law of Torts* § 59 ("the special rule as to trespassing children first appeared in 1873 in the Supreme Court of the United States"); Dobbs, *The Law of Torts* § 236, at 609 n. 14 (discussing the origin of the special rule and *Keffe*, 21 Minn. 207, and noting that "[t]he Supreme Court had held for the plaintiff in a similar case two years earlier in *Sioux City*").

¶ 41 Indeed, in response to the railroad's suggestion that "the plaintiff was a trespasser upon the railroad premises, and therefore cannot recover," the Supreme Court in *Stout* cites four cases in which the injured plaintiff was a trespasser yet was allowed to recover. 84 U.S. at 660–61. In three of the cases, the trespassing plaintiff was a young child; in another, the nineteen-year-old plaintiff was injured by spring guns set in the defendant's grounds. *Id.* After discussing these cases, the Court articulates the general rule to be "that while a railway company is not bound to the same degree of care in regard to mere strangers who are unlawfully upon its premises that it owes to passengers conveyed by it, it is not exempt from responsibility to such strangers for injuries arising from its negli-

gence or from its tortious acts." *Id.* at 661. This language reflects the "general rule" that landowners do not owe the same duty of care to trespassers as to those lawfully on their premises, but that a departure from this rule is warranted where the landowner is negligent or engages in tortious acts. Yet the premise for the rule, and the exception, is grounded in the plaintiff's status as a "trespasser," to whom typically no duty is owed.

¶ 42 Numerous Colorado cases cite *Stout* as the seminal American case on the attractive nuisance doctrine. *See, e.g., Lovejoy v. Denver & R.G.R. Co.*, 59 Colo. 222, 225–26, 146 P. 263, 264–65 (1915) ("The leading, if not the first, American case upon this subject is that of *Railway v. Stout*...."); *Simkins v. Dowis*, 100 Colo. 355, 358–59, 67 P.2d 627, 629 (1937) ("The leading case on the subject in the United States is probably that of *Sioux City & P.R. Co. v. Stout*...."); *Denver City Tramway Co. v. Nicholas*, 35 Colo. 462, 470–71, 84 P. 813, 815–16 (1906) ("this rule was ... affirmed by the Supreme Court of the United States in *Railroad Co. v. Stout*").Though the majority acknowledges that *Stout* is the "earliest articulation of the attractive nuisance doctrine" in this country, maj. op. ¶ 11, it fails to recognize that the rationale of the doctrine is premised on a child's status as a trespasser.

¶ 43 While this recitation of case law is not exhaustive,[2] it is sufficient to illustrate that

---

2. Numerous Colorado cases indicate that the attractive nuisance doctrine applies only to trespassing children. In *Nicholas*, the court stated the applicable rule "is as follows: 'If an owner sees fit to keep on his premises something that is an attraction and allurement to the natural instincts of childhood, the law imposes upon him the corresponding duty to take reasonable precautions to prevent the intrusion of children, or to protect from personal injury such as may be attracted thereto.'" 35 Colo. at 470, 84 P. at 815–16 (internal citation omitted). In *Simkins*, the court distinguished the case from others dealing with attractive nuisance, finding that "a shack and a fire in a rubbish burning device, on the owner's premises, were such common, ordinary, and usual things as not to entice trespass by children and as a matter of law, therefore were not attractive nuisances." 100 Colo. at 361, 67 P.2d at 630. In *Phipps v. Mitze*, 116 Colo. 288, 291, 180 P.2d 233, 234 (1947), the court found that the Restatement of Torts, section 339 [Artificial Conditions Highly Dangerous

to Trespassing Children], was more applicable to the facts in the case than section 335 [Artificial Conditions Highly Dangerous to Constant Trespassers upon a Limited Area], where the plaintiffs alleged that their nine-year-old son trespassed on defendant's land to hike and drowned in a pond. Finally, in *Callahan*, an eleven-year-old boy drowned in the Platte River on premises under the defendant's control. 112 Colo. at 461, 150 P.2d at 798. This court noted that under certain circumstances, a landowner "is under obligation to use reasonable care to protect [children of tender years] from injury when coming upon said premises, even though they may be technical trespassers." *Id.* at 465–66, 150 P.2d at 800 (internal quotation marks and citation omitted). The court continued, "although the private owner may owe no duty to an adult under the facts stated, the cases known as the Turntable Cases hold that such duty is due from him to a child of tender years." *Id.* at 466, 150 P.2d at 800 (internal quotation marks and citation omitted). The repeated use of the terms

the common law doctrine of attractive nuisance applied only to trespassing children. As its name suggests, the "attractive nuisance" doctrine applies when an object or condition entices or "*attracts*" a child to trespass onto the landowner's property and the child is injured by the object or condition that induced the trespass. Where a child enters the land as an invitee or licensee, the child is not "attracted" onto the land by the object or condition causing the injury. Tellingly, the majority does not cite a single Colorado case that applies the attractive nuisance doctrine to a child licensee or child invitee.

## II.

¶ 44 To the extent the majority suggests that an attractive nuisance doctrine confined to trespassing children would perpetuate an "inverted hierarchy" in contravention of *Gallegos,* its concern is unfounded. The attractive nuisance doctrine treats children who are attracted or allured onto a landowner's property as invitees rather than trespassers. The operation of the doctrine therefore conforms with section 13–21–115(3.5), which states that it was the General Assembly's intent to create a hierarchy of recovery for premises liability claims.

¶ 45 As discussed, *supra,* and noted in the court of appeals' opinion, attractive nuisances are considered constructive invitations to children. *See, e.g., United Zinc & Chem. Co. v. Britt,* 258 U.S. 268, 275, 42 S.Ct. 299, 66 L.Ed. 615 (1922) ("[I]t may be held that knowingly to establish and expose ... something that is certain to attract [children], has the legal effect of an invitation to them although not to an adult."); *Lovejoy,* 59 Colo. at 225, 146 P. at 264 ("The leaving or maintaining of a dangerous and attractive machine, or other instrument or agency upon one's premises, under circumstances which naturally tend to attract or allure young children of immature judgment, and to induce

them to believe that they are at liberty to enter and handle or play with it, is tantamount to an implied invitation to enter ....") (internal quotation marks omitted). When an attraction "invites" a child to trespass onto private property, the child trespasser is treated under the law as an invitee, not a trespasser. *See, e.g.,* Fowler V. Harper et al., *Harper, James and Gray on Torts* § 27.5 (3d ed. 2008) ("[T]he possessor's act of creating or maintaining [an artificial, highly dangerous, unguarded thing certain to attract young children] was equivalent to an 'invitation,' and the child became an invitee to whom the duty of care was owed."); 62 Am. Jur.2d § 293 ("One theory advanced by the courts in support of the attractive nuisance doctrine is that the attractiveness of the premises, or of the dangerous instrumentality, to children of tender years is to be considered as an implied invitation, which takes the children who accept it out of the category of trespassers and puts them in the category of invitees...." ); Speiser et al., *The American Law of Torts* § 14:73 (same). The attractive nuisance doctrine is thus "a legal fiction invoked for the purposes of transforming the status of a trespassing child into that of an invitee. The child is regarded, not as a trespasser, but as being rightfully on the premises." 62 Am.Jur.2d § 293.

¶ 46 Under the attractive nuisance doctrine, a possessor of land is subject to liability if "the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm" to the child. Restatement (First) of Torts § 339 (1934).[3] This "knew or should have known" standard echoes the duty of care under section 13–21–115(3)(c) owed to invitees: "[A]n invitee may recover for damages caused by the landowner's unreasonable failure to exercise reasonable care to protect against dangers of which he *actually knew or should have known.*" (emphasis added).[4]

---

"attraction," "allurement," and "entice" in these cases indicates the child's status as a trespasser.

**3.** *See also* Restatement (Second) of Torts § 339 (1965) (stating that a possessor of land is subject to liability if "the condition is one of which the possessor *knows or has reason to know* and

which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm" to the child) (emphasis added).

**4.** Petitioners' Complaint alleges liability under an invitee standard that echoes section 13–21–115(3)(c). *See* Compl. 26 (alleging that Plaintiff's

That said, the attractive nuisance doctrine is unique. As understood in leading torts treatises, liability under the attractive nuisance doctrine differs slightly from the common law duty owed to an invitee, in that the doctrine does not impose a duty to inspect or investigate to discover conditions potentially dangerous to trespassing children. *See, e.g.,* William L. Prosser, *Trespassing Children,* 47 Calif. L.Rev. 427, 451–52 (1959) ("[N]o case has ever held that the possessor is required to inspect his land, or to police it, to discover whether there is any condition upon it which will be likely to harm trespassing children.... [T]he proper phrase would appear to be 'has reason to know.'"); Dobbs, *The Law of Torts* § 236, at 610 (addressing the Second Restatement's phrasing of the duty: "That seems to be an obscure way of saying that the landowner need not investigate to discover the condition....").

¶ 47 In sum, under the common law doctrine, when an attraction "invites" a child to trespass onto another's land, the child trespasser is treated as a type of constructive invitee. This understanding of the doctrine is harmonious with the General Assembly's stated intent in section 13–21–115(3.5). By understanding the child trespasser as an "invitee"—even one to whom the duty to inspect is not owed—the operation of the doctrine does not run afoul of *Gallegos* by inverting the hierarchy of liability.

### III.

¶ 48 For the foregoing reasons, I would affirm the court of appeals' well-reasoned conclusion that the common law doctrine of attractive nuisance applies only to trespassing children, and its decision to affirm the trial court's summary judgment in favor of defendant. It is undisputed that the child plaintiff here was a licensee, not a trespasser. Therefore the attractive nuisance doctrine, as recognized by the common law and this court, does not apply. Accordingly, I respectfully dissent.

injuries were caused by the land owner's "unreasonable failure to exercise reasonable care to

¶ 49 I am authorized to state that Justice COATS joins in this dissent.

protect against dangers of which the land owner *knew or should have known"*) (emphasis added).